Denisse O. Gastélum, SBN 282771
**GASTÉLUM LAW, APC**
**A PROFESSIONAL CORPORATION**
3767 Worsham Ave.
Long Beach, California 90808
Tel: (213) 340-6112
Fax: (213) 402-8622

Email: dgastelum@gastelumfirm.com

Christian Contreras, SBN 330269
**LAW OFFICES OF CHRISTIAN CONTRERAS**
**PROFESSIONAL LAW CORPORATION**
360 E. 2nd St., 8th Floor
Los Angeles, California 90012
Tel: (323) 435-8000
Fax: (323) 597-0101
Email: CC@Contreras-Law.com

Attorneys for Plaintiffs,
ESTATE OF GUSTAVO SILVA, JR., by and through successors in interest, Maria Lucila, Gustavo Silva Sr., Yesika Silva, and Gustavo Silva Jr.; MARIA LUCILA, individually; GUSTAVO SILVA, SR., individually; YESIKA SILVA, individually; GUSTAVO SILVA, JR., individually

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF GUSTAVO SILVA, JR., by and through successors in interest, Maria Lucila, Gustavo Silva Sr., Yesika Silva, and Gustavo Silva Jr.; MARIA LUCILA, individually; GUSTAVO SILVA, SR., individually; YESIKA SILVA, individually; GUSTAVO SILVA, JR., individually, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF IMPERIAL, a public entity; IMPERIAL COUNTY SHERIFF'S OFFICE; SHERIFF FRED MIRAMONTES, in his individual and official capacities; CORRECTIONAL CAPTAIN JUAN CHAVARIN, individually; CORRECTIONAL LIEUTENANT ROBERT WILSON, individually; NAPHCARE INC., an Alabama Corporation; and DOES 1 through 10, individually, jointly and severally, <br><br> Defendants. | **CASE NO.:** '25CV1295 JES MMP <br><br> **COMPLAINT FOR DAMAGES** <br><br> 1. Failure to Protect from Harm, Fourteenth Amendment Violation (42 U.S.C. § 1983); <br> 2. Failure to Provide Medical Care, Fourteenth Amendment Violation (42 U.S.C. § 1983); <br> 3. Deprivation of the Right to Familial Relationship with Decedent (42 U.S.C. § 1983); <br> 4. Municipal Liability (*Monell*, 42 U.S.C. § 1983); <br> 5. Supervisory Liability Causing Constitutional Violations (Failure to Properly Train, Supervise and Discipline, 42 U.S.C. § 1983); <br> 6. Negligence – (Survival & Wrongful Death); <br> 7. Medical Malpractice (Survival & Wrongful Death); <br> 8. Violation of California Government Code §845.6 (Survival & Wrongful Death); <br> 9. Violation of California Civil Code §52.1 (Tom Bane Act); <br> 10. Violation of 42 U.S.C §12101 et seq. (ADA); <br> 11. Violation of 29 U.S.C §794(a) (Rehabilitation Act) <br><br> **DEMAND FOR JURY TRIAL** |

1

**COMPLAINT FOR DAMAGES**

# COMPLAINT FOR DAMAGES

**COME NOW** Plaintiffs ESTATE OF GUSTAVO SILVA, JR., by and through successors in interest, Maria Lucila, Gustavo Silva Sr., Yesika Silva, and Gustavo Silva Jr.; MARIA LUCILA, individually; GUSTAVO SILVA, SR., individually; YESIKA SILVA, individually; GUSTAVO SILVA, JR., individually, and allege as follows:

## I.

## INTRODUCTION

1. This civil rights action seeks to establish the true and unequivocal facts surrounding the in-custody death of pretrial detainee Gustavo Silva, Jr. at the Imperial County Sheriff's Office, Regional Adult Detention Facility on January 22, 2024. This action also seeks to bring to public light the deliberate disregard for safety and protection carried out by the individual defendants in the present action.

2. Gustavo Silva, Jr. was a father, grandfather, brother, and friend,



cherished for his joyful spirit and ability to bring laughter to those around him. Born in Brawley, California, he was a lifelong resident of Holtville and a proud graduate of Holtville High School. Known to his loved ones as "Tavo" or "Tavito" and affectionately called "Goofy" by friends, he was admired for his outgoing nature and deep love for his family. Gustavo shared an especially close bond with his daughter, Yesika, and adored his grandchildren. His passion for music, movies, and WWE created lasting memories with his children, grandchildren, and extended family. His untimely death while in custody has brought immense grief to those who knew him, and this action seeks accountability for the circumstances surrounding his passing.

3.     Long before Gustavo Silva, Jr.'s death, each of the individually named defendants from the County of Imperial, the Imperial County Sheriff's Department and NaphCare Inc. knew that there existed a great indifference to the safety and protection of the inmates who were in the government's custody within the Imperial County correctional facilities, including the Regional Adult Detention Facility.

4.     The failure to provide reasonable medical and mental health care to inmates like Mr. Silva was a well-known unconstitutional pattern and practice of the County of Imperial, the Imperial County Sheriff's Department and NaphCare Inc. Defendants failed to provide reasonable medical and mental health care or access thereto, they were understaffed and/or incompetently staffed, failed to provide proper housing, failed to adequately monitor inmates suffering from medical emergencies, among other unconstitutional practices. NaphCare Inc. had policies, customs and practices disincentives that discouraged its employees from sending patients to a hospital or a higher level of care than they could provide at the jail. These unconstitutional customs and practices, among others, were a foreseeable contributing moving force of Mr. Silva's death. An independent contractor performing medical services for prisoners may be subject to the *Monell* standard for liability under section 1983 to the same extent as a government entity. *See West v. Atkins*, 487 U.S. 42, 54-56 (1988).

5.     The County of Imperial and the Imperial County Sheriff's Department, by and through their Sheriff, Jail Commander and custody staff, failed to adequately monitor the administration of the contract with the NaphCare Inc. even though they had repeated notices of the facts of this unconstitutional conduct and knew the Imperial County Jails, including the Regional Adult Detention Facility, had become unsafe for those with serious medical and mental health needs like Mr. Silva. Deliberate indifference may be shown where prison officials or practitioners "deny, delay, or intentionally interfere with medical treatment." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). Deliberate indifference can also be proven by the

failure to medically screen a new jail inmate with serious medical needs. *Gibson, supra,* 290 F.3d at 1189-93. "Access to the medical staff has no meaning if the medical staff is not competent to deal with the prisoners' problems. The medical staff must be competent to examine prisoners and diagnose illnesses." *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982).

6.     The County of Imperial and Sheriff Miramontes sought to avoid accountability by attempting to transfer to NaphCare Inc. their non-delegable constitutional duty to provide detainees like Mr. Silva reasonable security and access to medical and mental health care. The County of Imperial has a constitutional duty to provide adequate medical and psychiatric care to individuals in custody, whether it contracts out its health care responsibilities or provides them itself. *See West v. Atkins*, 487 U.S. 42, 55-56 (1988); *Gibson, supra,* 290 F.3d 1175, 1187–88 & n.9 (9th Cir. 2002), overruled on other grounds by *Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016) (en banc). The Supreme Court has held that "[c]ontracting out prison medical care does not relieve the [County] of its constitutional duty to provide adequate medical treatment to those in its custody." *West, supra,* 487 U.S. 42, 55-56. The County cannot shift responsibility to care for its inmates' medical needs to NaphCare Inc. because "if this were the basis for delimiting § 1983 liability, the state will be free to contract out all services which it is constitutionally obligated to provide and leave its citizens with no means for vindication of those rights, whose protection has been delegated to 'private' actors, when they have been denied." *Id.* at 56, n. 14; *see also Pollard v. GEO Group, Inc.*, 629 F.3d 843, 856 (9th Cir. 2010) ("*West* makes clear that '[c]ontracting out' care '*does not* relieve' the government of its 'constitutional duty' to provide adequate care or 'deprive inmates of the means to vindicate their Eight Amendment rights.'"); *Armstrong v. Schwarzenegger*, 622 F. 3d 1058, 1074 (9th Cir. 2010) (the state "cannot avoid its obligations under federal law by contracting with a third party to perform its functions. The rights of individuals are not so ethereal nor so easily avoided.").

**COMPLAINT FOR DAMAGES**

7.    Despite a history of complete disregard to inmate safety and protection, each of the individually named defendants in this lawsuit deliberately failed to take even modest actions to prevent in-custody deaths at the Imperial County correctional facilities. Thus, by the time Gustavo Silva, Jr. was taken into custody and placed at the ICSO Regional Adult Detention Facility, the jail was infested with endemic, ongoing and unabated risks of injury or death to inmates – risks which indeed resulted in Gustavo Silva, Jr.'s death on January 22, 2024.

## II.

## JURISDICTION AND VENUE

8.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of California. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

9.    Venue is proper within the Southern District of California pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all Defendants reside within this district and the events and omissions giving rise to Plaintiffs' claims occurred within this district.

## III.

## PENDANT CLAIMS

10.    Plaintiffs have complied with the California Tort Claims Act requirements with respect to their claims arising under state law.

11.    With respect to these supplemental state claims, Plaintiffs request that this Court exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over such claims as they arise from the same facts and circumstances which underlie the federal claims.

///

///

///

5

**COMPLAINT FOR DAMAGES**

## IV.

## __PARTIES__

### A. Plaintiffs

12.     Decedent Gustavo Silva, Jr. (hereinafter also "Decedent") was forty-seven (47) years old when he passed away on January 22, 2024. He was the father of Yesika Silva and Gustavo Silva, Jr. At the time of his death, he was a pretrial detainee who resided in the County of Imperial, California. The claims made by Plaintiff ESTATE OF GUSTAVO SILVA, JR., are brought by successors in interest, Maria Lucila, Gustavo Silva, Sr., Yesika Silva, and Gustavo Silva, Jr.

13.     Plaintiff MARIA LUCILA, is and was, at all times relevant hereto, the natural mother of decedent Gustavo Silva, Jr., and at all times relevant hereto was a resident of the County of Imperial, California. Plaintiff brings these claims pursuant to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions. Plaintiff also brings her claims individually and on behalf of decedent Gustavo Silva, Jr. on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law and California law. Plaintiff also brings these claims as a Private Attorney General, to vindicate not only her rights, but others' civil rights of great importance.

14.     Plaintiff GUSTAVO SILVA, SR., is and was, at all times relevant hereto, the natural father of decedent Gustavo Silva, Jr., and at all times relevant hereto was a resident of the County of Imperial, California. Plaintiff brings these claims pursuant to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions. Plaintiff also brings his claims individually and on behalf of decedent Gustavo Silva, Jr. on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law and California law. Plaintiff also brings these claims as a Private Attorney General, to vindicate not only his rights, but others' civil rights of great importance.

**COMPLAINT FOR DAMAGES**

15.    Plaintiff YESIKA SILVA, is and was, at all times relevant hereto, the natural daughter of decedent Gustavo Silva, Jr., and at all times relevant hereto was a resident of the County of Imperial, California. Plaintiff brings these claims pursuant to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions. Plaintiff also brings her claims individually and on behalf of decedent Gustavo Silva, Jr. on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law and California law.

16.    Plaintiff GUSTAVO SILVA, JR., is and was, at all times relevant hereto, the natural son of decedent Gustavo Silva, Jr., and at all times relevant hereto was a resident of the County of Imperial, California. Plaintiff brings these claims pursuant to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions. Plaintiff also brings his claims individually and on behalf of decedent Gustavo Silva, Jr. on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law and California law.

**B. Defendants**

17.    Defendant COUNTY OF IMPERIAL (hereinafter also "COUNTY") owns, operates, manages, directs and controls Defendant IMPERIAL COUNTY SHERIFF'S OFFICE (hereinafter also "ICSO"), also a separate public entity, which employs other Doe Defendants in this action. At all times relevant to the facts alleged herein, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees complied with the laws and the Constitutions of the United States and of the State of California.  Defendant COUNTY is and was responsible for ensuring the protection and safety of all persons incarcerated at the ICSO correctional facilities, including the Herbert Hughes Correctional Center (hereinafter "HHCC"), the Oren R. Fox Medium Security

**COMPLAINT FOR DAMAGES**

Detention Facility (hereinafter "OFDF"), and the Regional Adult Detention Facility (hereinafter "RADF") (hereinafter collectively "COUNTY Jails").

18. Defendant FRED MIRAMONTES (hereinafter "SHERIFF MIRAMONTES"), at all times mentioned herein, is and, since January 2023, has been the Sheriff-Coroner-Marshal of Defendant COUNTY OF IMPERIAL, the highest position in the COUNTY Jails. As Sheriff, Defendant MIRAMONTES is and was responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of all COUNTY Jails' employees and/or agents. Defendant SHERIFF MIRAMONTES is and was charged by law with oversight and administration of the COUNTY Jails, including ensuring the safety of the inmates housed therein. Defendant SHERIFF MIRAMONTES also is and was responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the COUNTY Jails alleged herein were committed. Defendant SHERIFF MIRAMONTES is being sued in his individual and official capacities.

19. Defendant JUAN CHAVARIN ("CHAVARIN"), at all times mentioned herein, was employed by Defendant COUNTY as the Correctional Captain of the COUNTY Jails, including the RAFD, for the COUNTY, and he was acting within the course and scope of that employment. In that capacity, Defendant CHAVARIN was a policy making official for the COUNTY OF IMPERIAL. During the relevant time period, Defendant CHAVARIN was responsible for the general management and control of the COUNTY Corrections Operations, with primary authority and responsibility for the operations, staff assignments, program development, personnel supervision and training, maintenance and auxiliary inmate services at the jail, subordinate only to the Sheriff and/or Undersheriff. Defendant CHAVARIN is being sued in his individual capacity.

20. Defendant ROBERT WILSON ("WILSON"), at all times mentioned herein, was employed by Defendant COUNTY as Correctional Lieutenant of the

**COMPLAINT FOR DAMAGES**

COUNTY Jails, specifically the RAFD, for the COUNTY, and he was acting within the course and scope of that employment. In that capacity, Defendant WILSON was a policy making official for the COUNTY OF IMPERIAL. During the relevant time period, Defendant WILSON was responsible for the general management and control of the COUNTY Corrections Operations, specifically the RAFD, with primary authority and responsibility for the operations, staff assignments, program development, personnel supervision and training, maintenance and auxiliary inmate services at the jail, subordinate to the Correctional Captain, Defendant JUAN CHAVARIN. Defendant WILSON is being sued in his individual capacity.

21.     Defendants COUNTY OF IMPERIAL, IMPERIAL COUNTY SHERIFF'S OFFICE, SHERIFF MIRAMONTES, CHAVARIN and WILSON will hereinafter be referred to as the COUNTY DEFENDANTS.

22.     Defendant NAPHCARE, INC. (hereinafter "NAPHCARE") is a private corporation incorporated under the laws of the State of Alabama, authorized to do business in the State of California, and at all relevant times conducted business in the County of Imperial. NAPHCARE was under contract with Defendants COUNTY, SHERIFF MIRAMONTES, and ICSO to serve as the exclusive provider of medical, mental health, and dental care to individuals incarcerated in Imperial County's adult detention facilities, including the RADF, where Decedent was housed as a pretrial detainee at the time of his death. Pursuant to its contract, NAPHCARE was responsible for all aspects of inmate healthcare, including intake screening, medical and mental health evaluations, emergency and non-emergency care, medication administration, hospitalization referrals, and recordkeeping. At all relevant times, NAPHCARE was also responsible for the hiring, training, supervision, and retention of its personnel, including DOES 1 through 10, who acted within the course and scope of their employment.

23.     Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1 through 10 ("DOE Defendants") and therefore sue these Defendants by such

**COMPLAINT FOR DAMAGES**

fictitious names. Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein. Plaintiffs will amend their complaint to state the names and capacities of each DOE Defendant when they have been ascertained.

24. The identities, capacities, and/or nature of involvement of the defendants sued as DOES 1 through 10 are presently unknown to the Plaintiffs who therefore sue these defendants by fictitious names. Plaintiffs are informed, believe, and thereupon allege that DOES 1 through 10 include individual law enforcement personnel and medical personnel employed by the COUNTY, ICSO and/or NAPHCARE, and that they were involved in some manner and are legally responsible for the wrongful acts and conduct alleged herein. Plaintiffs will amend this complaint to substitute the DOE Defendants' true names and capacities when they have been ascertained. Plaintiffs are informed, believe, and thereupon allege that each DOE defendant is a resident of California. Upon information and belief, DOES 1 through10 were and still are residents of the County of Imperial, California. DOES 1 through 10 are sued in both their individual and official capacities.

25. At all relevant times, DOES 7 and 8 were managerial, supervisorial, training, and/or policymaking employees of Defendant NAPHCARE. At the time of the incident, DOES 7 and 8 were acting under color of law within the course and scope of their duties as employees for NAPHCARE. They had supervisorial authority over DOES 1-10, and the NAPHCARE employees at the COUNTY Jails. DOES 7 and 8 were acting with the complete authority and ratification of their principal, Defendant NAPHCARE.

26. At all relevant times, DOES 9 and 10 were managerial, supervisorial, training, and/or policymaking employees of Defendant COUNTY. At the time of the incident, DOES 9 and 10 were acting under color of law within the course and scope of their duties as employees for the ICSO and/or the COUNTY. They had supervisorial authority over DOES 1-10, and the employees of the ICSO. DOES 9 and 10 were

acting with the complete authority and ratification of their principal, Defendant COUNTY.

27. Each of the defendants, including the DOE defendants, caused, and is responsible for, the unlawful conduct and resulting injuries suffered by Plaintiffs by, among other things, personally participating in the unlawful conduct, acting jointly, or conspiring with others who did so; by ordering, authorizing, acquiescing in, or setting in motion policies, plans, or actions that led to the unlawful conduct, by failing to take action to prevent the unlawful conduct; by failing and refusing to initiate and maintain adequate training and supervision; by failing to enact policies to address the constitutional rights of protesters despite the obvious need for such a policy; and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action.

28. Plaintiffs are informed and believe and thereon allege that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiffs are further informed and believe and thereon allege that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged. At all material times, each Defendant was jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiffs' and decedent Gustavo Silva, Jr.'s constitutional rights and other harm.

29. Plaintiffs are informed, believe, and thereupon allege that, at all times relevant hereto, Defendants, and each of them, acted as the agents, servants, and employees of each of the other defendants.

11

**COMPLAINT FOR DAMAGES**

30.     In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted within the course and scope of their employment.

31.     In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under the color of law.

**V.**

**<u>FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION</u>**

32.     On or about January 21, 2024, Gustavo Silva, Jr. was arrested and booked into the Imperial County Sheriff's Office, Regional Adult Detention Facility, located at 1328 Sperber Road, El Centro, CA 92243.

33.     Upon information and belief, Mr. Silva completed a preliminary medical and psychological screening.

34.     Despite having undergone a preliminary medical and psychological screening at the time of booking, and despite obvious signs that Mr. Silva suffered from mental health issues, Mr. Silva was placed in the general population without any designation regarding his medical condition that would alert those in charge of his care that he required monitoring, medical treatment, psychological treatment, and follow-up care.

35.     Upon information and belief, COUNTY custody staff and NAPHCARE medical staff had an opportunity to observe the clear signs of Mr. Silva's acute suicidality. Despite these alarming signs, COUNTY custody staff and NAPHCARE medical staff were indifferent to Mr. Silva's health and safety.

36.     Upon information and belief, due to the COUNTY Jails patterns and practices of not conducting proper and timely Title 15 welfare and safety checks, Gustavo Silva, Jr.'s dire need for emergency medical intervention went unnoticed by the RADF custody, medical and mental health staff, who were responsible for monitoring and ensuring the welfare of all inmates, including Mr. Silva.

37.     Gustavo Silva, Jr. was forty-seven (47) years old when he died on January 22, 2024, while he was in custody at the Regional Adult Detention Facility.

12

**COMPLAINT FOR DAMAGES**

38.    Gustavo Silva, Jr. was a pretrial detainee, and therefore, innocent until proven guilty.

39.    Plaintiffs timely and properly filed tort claims with the County of Imperial pursuant to California Government Code sections 910, *et seq.*, and this action is timely filed within all applicable statutes of limitation.

40.    This complaint may be pled in the alternative pursuant to Federal Rule of Civil Procedure 8(d).

## VI.

## FACTUAL ALLEGATIONS COMMON TO *MONELL* AND SUPERVISORIAL CAUSES OF ACTION

41.    Based upon the principles established in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), Defendants are liable for all injuries sustained by Plaintiffs as set forth herein. To establish municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), a plaintiff must prove: (1) that [the plaintiff] possessed a constitutional right of which she was deprived; (2) that the municipality had a policy/custom/practice; (3) that this policy/custom/practice amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy/custom/practice is the moving force behind the constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir, 2011). The policy/custom/practice "need only cause the constitutional violation; it need not be unconstitutional per se." *Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994). Recognized paths to *Monell* liability include: (1) an unconstitutional custom, practice or policy behind the violation of rights; (2) a deliberately indifferent omission, such as a failure to train or failure to have a needed policy; and (3) a final policy-maker's involvement in or ratification of the conduct underlying the violation of rights. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249-1250 (9th Cir. 2010).

**A. Defendants' Custom, Pattern and Practice of Failing to Provide Constitutionally Required Medical, Mental Health Care and Security is Widespread and Ongoing.**

42.     Upon information and belief, Imperial County has experienced multiple in-custody deaths within its detention facilities, including the Regional Adult Detention Facility ("RADF"), over the past several years. In 2024, these deaths included, but are not limited to:

    i.     On May 8, 2024, a 32-year-old Hispanic male died while housed at RADF, awaiting transportation on an out-of-county warrant. The cause of death was pending investigation.

    ii.     On June 8, 2023, a 33-year-old male inmate was found unresponsive in his housing module at RADF and subsequently pronounced dead despite resuscitation efforts.

43.     These deaths are indicative of systemic failures by the COUNTY to ensure the safety and adequate medical care of detainees in its custody. Despite having knowledge, actual or constructive, of these incidents, the COUNTY has failed to implement sufficient policies, procedures, staffing, training, and oversight to prevent further harm to detainees.

44.     The COUNTY's deliberate indifference is further evidenced by its failure to conduct adequate investigations, provide timely medical intervention, or respond effectively to known risks associated with detainee medical and mental health conditions.

45.     As a direct and proximate result of these policies and customs, and the COUNTY's failure to act, detainees housed in Imperial County detention facilities remain at substantial risk of serious injury and death, including the Decedent in this matter.

14

**COMPLAINT FOR DAMAGES**

**B. The County Defendants' Indifference to the Constitutional Violations and Failures Permeating the COUNTY Jails Affecting Inmates with Mental Health Issues**

46.   Defendants SHERIFF MIRAMONTES, ICSO Correctional Supervisors JUAN CHAVARIN, ROBERT WILSON, and NAPHCARE medical staff, were responsible for the provision of medical and mental health services at the COUNTY Jails, and as such, were responsible for the following at the COUNTY Jails:

i.   Staffing for the jail's medical and mental health units;

ii.   Administrative structure, medical direction and operational oversight for the medical and mental health units;

iii.   Oversight of the day-to-day operations of the health services programs at the jail;

iv.   Design and implementation of a suicide prevention program, including the related policies and procedures to fully and safely carry out such program;

v.   Development, implementation and revision policies and procedures which relate to the overall provision of mental health and medical services, including the operational aspects of such services and compliance with regulations and statutes;

vi.   Development, implementation and revision policies, procedures and practices for the training of custody, medical and mental health staff at the jail;

vii.   Identifying of all unsafe or unhealthy conditions within the jail facilities related to the provision of medical and mental health services, and proposing of corrective measures of such conditions in a timely manner;

viii.   Provide continuous training to detention staff regarding the screening of inmates, identification of mentally ill inmates, risk recognition, and suicide prevention.

15

**COMPLAINT FOR DAMAGES**

47. Defendants COUNTY, ICSO, SHERIFF MIRAMONTES, ICSO Correctional Supervisors JUAN CHAVARIN and ROBERT WILSON, and COUNTY custody staff along with NAPHCARE medical and mental health staff, had been on notice for years that their provision of medical and mental health treatment to inmates at the COUNTY Jails was inadequate and resulted in needless harm and death.

48. By the time that decedent Gustavo Silva, Jr. was transferred to the ICSO, SHERIFF MIRAMONTES, ICSO Correctional Supervisors JUAN CHAVARIN and ROBERT WILSON, and COUNTY custody staff along with NAPHCARE medical and mental health staff, understood the jail cell where decedent Gustavo Silva, Jr. was housed until his death on January 22, 2024, was not suitable for an inmate who exhibited clear signs of suicidal ideations because the jail cell contained suicide hazards and was unreasonably dangerous for housing inmates with identified mental health concerns

49. Defendants COUNTY, ICSO, SHERIFF MIRAMONTES, ICSO Correctional Supervisors JUAN CHAVARIN and ROBERT WILSON, and COUNTY custody staff along with NAPHCARE medical and mental health staff, knew that placing decedent Gustavo Silva, Jr. in such a jail cell would pose a substantial risk of death. Prior to the death of decedent Gustavo Silva, Jr., other persons in the custody of the COUNTY and supervised and cared for by NAPHCARE medical staff had attempted suicide by similar, if not identical, means during their incarcerations at the COUNTY Jails.

50. Defendants COUNTY, ICSO, SHERIFF MIRAMONTES, ICSO Correctional Supervisors JUAN CHAVARIN and ROBERT WILSON, and COUNTY custody staff along with NAPHCARE medical and mental health staff, were repeatedly put on notice of the great dangers which existed within the COUNTY Jails through the history of in-custody deaths yet were deliberately indifferent to the safety and protection of inmates.

**COMPLAINT FOR DAMAGES**

51.    Based on the aforementioned, Defendants COUNTY, ICSO, SHERIFF MIRAMONTES, ICSO Correctional Supervisors JUAN CHAVARIN and ROBERT WILSON, and the COUNTY custody staff along with NAPHCARE medical and mental health staff, knew of the dangers that posed a risk to decedent Gustavo Silva, Jr. safety, yet disregarded these dangers resulting in his death.

## VII.

## PUNITIVE/EXEMPLARY DAMAGES ALLEGATIONS

**(Against individual Defendants SHERIFF MIRAMONTES, JUAN CHAVARIN, ROBERT WILSON and DOES 1-10)**

52.    Each Defendants' conduct as alleged herein was done with reckless disregard for human life, oppression, and malice.

53.    Long before Gustavo Silva, Jr.'s death, Defendants SHERIFF MIRAMONTES, JUAN CHAVARIN, ROBERT WILSON and DOES 1 through 10 knew that there existed a great indifference to the safety and protection of the inmates who were in the government's custody within the COUNTY Jails.

54.    Defendants SHERIFF MIRAMONTES, JUAN CHAVARIN, ROBERT WILSON, and DOES 1 through 10 were repeatedly put on notice of the great dangers which existed within the COUNTY Jails through the history of in-custody deaths yet were deliberately indifferent to the safety and protection of inmates.

55.    Despite the history of complete disregard to inmate safety and protection, Defendants SHERIFF MIRAMONTES, JUAN CHAVARIN, ROBERT WILSON, and DOES 1 through 10 have deliberately failed to take even modest actions to prevent in-custody deaths at the COUNTY Jails which have for a very long time been infested with endemic, ongoing and unabated risks of injury or death to inmates.

56.    The Defendant officers, and each of them, acted with malice and oppression and with a conscious disregard for Plaintiffs' rights, making the individual defendants, including DOES 1-10, liable for punitive damages.

**COMPLAINT FOR DAMAGES**

## VIII.

## PRE-DEATH PAIN AND SUFFERING DAMAGES ALLEGATIONS

### (Against All Defendants SHERIFF MIRAMONTES, JUAN CHAVARIN, ROBERT WILSON, and DOES 1-10)

57.     Pursuant to *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014), Plaintiff ESTATE OF GUSTAVO SILVA, JR. seeks damages for Mr. Silva's own pre-death pain and suffering prior to his death. Such damages are also recoverable under Plaintiffs' state law claims pursuant to Code of Civil Procedure Section 377.34(b).  Based on the aforementioned factual summary, there can be no question that Mr. Silva suffered extensive pre-death pain and suffering during his incarceration at the COUNTY Jails. Upon information and belief, Mr. Silva's mental health deteriorated and continued to worsen at the COUNTY Jails.  In addition to the excruciating pain that came from asphyxiating[1] himself.  Plaintiffs submit that the period for which pre-death pain and suffering began to occur was on January 21, 2024—the day Mr. Silva stepped foot into the COUNTY Jails following his arrest.

## IX.

## FIRST CAUSE OF ACTION

### Failure to Protect from Harm,

### Violation of the Fourteenth Amendment to the United States Constitution

### (Survival Action – 42 U.S.C. § 1983)

### By Plaintiff Estate of Gustavo Silva, Jr. As Against

### Defendants DOES 1 through 10

58.     Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

59.     On January 22, 2024, Defendants DOES 1 through 10, made the intentional decision to house and to continue to house GUSTAVO SILVA, JR in a

---

[1] Asphyxiation is not an instantaneous death. Asphyxiation is tortuous and causes immense pain and suffering before actual death.

18

**COMPLAINT FOR DAMAGES**

condition of confinement at RADF. Defendants DOES 1 through 10's conditions of confinement which they intentionally placed GUSTAVO SILVA, JR placed GUSTAVO SILVA, JR at substantial risk of serious harm given that GUSTAVO SILVA, JR was given the opportunity to carry out self-harm.

60. Worst yet, Defendants DOES 1 through 10 did not take reasonable available measures to abate or reduce the risk they placed GUSTAVO SILVA, JR. in despite a reasonable deputy under such circumstances would have recognized and/or appreciated the high degree of risk involved—making the consequences of the DOES 1 through 10's conduct obvious. Such conduct was objectively unreasonably. Consequently, by not taking such measures, DOES 1 through 10 caused the plaintiff's injuries.

61. Furthermore, Defendants COUNTY, ICSO, and DOES 1 through 10 were on notice that their deficient policies, procedures, and practices alleged herein created substantial risk of serious harm to an inmate in decedent Gustavo Silva, Jr.'s position.

62. Each Defendant could have taken action to prevent unnecessary harm to decedent Gustavo Silva, Jr. but refused or failed to do so.

63. By policy, procedure, and practice, Defendants COUNTY, ICSO, and DOES 1 through 10 deliberately disregarded the hazards and risks posed to persons incarcerated at the RADF, as alleged above. Defendants failed to take any reasonable steps to mitigate the obvious and well-known risks of harm that was attendant to housing decedent Gustavo Silva, Jr. at RADF.

64. Defendants including SHERIFF MIRAMONTES, JUAN CHAVARIN, ROBERT WILSON and DOES 8 through 10 also knew that deputies routinely failed to conduct required welfare and safety checks at the COUNTY Jails, including RADF, and failed to take sufficient actions to correct this problem and ensure that necessary checks were performed.

65. Defendants SHERIFF MIRAMONTES failed to take corrective action, discipline, or remove the command staff at the COUNTY Jails, including RADF, who, upon information and belief, directed the deputies to falsify safety check logs and violate the COUNTY's safety check policies. Defendant SHERIFF MIRAMONTES ratified their actions, and the practices used under his watch.

66. Defendants COUNTY, ICSO and DOES 1 through 10 were on notice that their policies, procedures, and practices for monitoring inmates at the COUNTY Jails, including RADF, were inadequate and gave rise to a substantial risk of serious harm.

67. Defendants including SHERIFF MIRAMONTES, JUAN CHAVARIN, ROBERT WILSON and DOES 8 through 10 failed to properly train and supervise ICSO custody staff and NAPHCARE medical and mental health staff regarding policies, procedures, and practices necessary for the protection of inmates from risks and hazards existing within the COUNTY Jails, including RADF.

68. Defendants including SHERIFF MIRAMONTES, JUAN CHAVARIN, ROBERT WILSON and DOES 8 through 10's failure to correct their policies, procedures, and practices despite notice of significant and dangerous problems evidences deliberate indifference to the inmates in their care.

69. Defendants SHERIFF MIRAMONTES, JUAN CHAVARIN, ROBERT WILSON and DOES 8 through 10 ratified Defendants DOES 1 through 10's actions and inactions amounting to constitutional violations.

70. Defendants DOES 1 through 10's failure to conduct the required safety check of decedent Gustavo Silva, Jr.'s housing unit on the date of his death evidences deliberate indifference to the risk of harm to decedent Gustavo Silva, Jr.

71. Defendants SHERIFF MIRAMONTES, JUAN CHAVARIN, ROBERT WILSON and DOES 8 through 10 ratified Defendants DOES 1 through 10's failure to conduct safety checks and falsification of logs.

20

**COMPLAINT FOR DAMAGES**

72.   As a direct and proximate result of Defendants' conduct, the civil right of Gustavo Silva, Jr., as protected by the Fourteenth Amendment of the United States Constitution were violated. Further, decedent Gustavo Silva, Jr. experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

73.   Defendants subjected decedent Gustavo Silva, Jr. to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

74.   As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Decedent, through Plaintiffs herein, sustained injuries and damages.

75.   The conduct of Defendants entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not seek punitive damages against Defendants COUNTY.

76.   Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

## X.

### SECOND CAUSE OF ACTION

**Failure to Provide Medical Care,**

**Violation of the Fourteenth Amendment to the United States Constitution**

**(Survival Action – 42 U.S.C. § 1983)**

**By Plaintiff Estate of Gustavo Silva, Jr. As Against**

**Defendants DOES 1 through 10**

77.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

78.   By the actions and omissions described above, Defendants DOES 1 through 10, as alleged herein, violated 42 U.S.C. § 1983, depriving decedent Gustavo Silva, Jr., through Plaintiffs herein, of the following clearly established and well-

**COMPLAINT FOR DAMAGES**

settled constitutional rights protected by the Fourth and Fourteenth Amendments to the United States Constitution: Decedent's right to be free from deliberate indifference to Gustavo Silva, Jr.'s serious medical and mental health needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth Amendments.

79.    By the actions and omissions described above, Defendants DOES 1 through 10, as alleged herein, including but not limited to their failure to provide decedent Gustavo Silva, Jr. with appropriate emergency medical and mental health care, along with the acts and/or omissions of Defendants in failing to train, supervise, and/or promulgate appropriate policies and procedures to provide emergency medical and mental health care and life saving care to persons in their custody, constituted deliberate indifference to Gustavo Silva, Jr.'s serious medical and mental health needs, health, and safety.

80.    As a direct and proximate result of Defendants' conduct, the civil rights of Gustavo Silva, Jr., as protected by the Fourteenth Amendment of the United States Constitution were violated.  Further, decedent Gustavo Silva, Jr. experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

81.    Defendants subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

82.    As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Decedent, through Plaintiff herein, sustained injuries and damages.

83.    The conduct of Defendants entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not seek punitive damages against Defendants COUNTY.

**COMPLAINT FOR DAMAGES**

84.     Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

## XI.

## THIRD CAUSE OF ACTION

**Deprivation of the Right to Familial Relationship with Decedent, Violation of the Fourteenth Amendment to the United States Constitution**

**(42 U.S.C. § 1983)**

**By Plaintiffs Maria Lucila, Gustavo Silva, Sr., Yesika Silva and Gustavo Silva, Jr. As Against Defendants DOES 1 through 10**

85.     Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

86.     The aforementioned acts and/or omissions of Defendants DOES 1 through 10 in being deliberately indifferent to decedent Gustavo Silva, Jr.'s protection, safety, and serious medical and mental health needs, violating decedent Gustavo Silva, Jr.'s constitutional rights, and their failure to train, supervise, and/or take other appropriate measures to prevent the acts and/or omissions that caused the untimely and wrongful death of Gustavo Silva, Jr. shocks the conscious and deprived Plaintiffs MARIA LUCILA, GUSTAVO SILVA, SR., YESIKA SILVA and GUSTAVO SILVA, JR. of their liberty interests in the parent-child relationship in violation of their substantive due process rights as defined by the Fourteenth Amendments of the Constitution.

87.     All of the acts of Defendants DOES 1 through 10 and the persons involved were done under color of state law.

88.     The acts and omissions of each Defendant deprived Plaintiffs MARIA LUCILA, GUSTAVO SILVA, SR., YESIKA SILVA and GUSTAVO SILVA, JR. of their rights, privileges, and immunities secured by the Constitution and laws of the United States, including but not limited to the Fourteenth Amendment by, among other things, depriving Plaintiffs of their rights to a parent-child relationship with

23

**COMPLAINT FOR DAMAGES**

decedent Gustavo Silva, Jr. without due process of law by their deliberate indifference in denying Gustavo Silva, Jr. protection and safety while incarcerated at RADF and access to medical care while suffering a medical emergency at RADF.

89.    Defendants DOES 1 through 10 and the other involved agents and employees acted pursuant to expressly adopted official policies or longstanding practices or customs of the COUNTY, ICSO, and NAPHCARE. These include policies and longstanding practices or customs of failing to provide persons in pretrial custody who are experiencing medical emergencies access to medical care as stated above and incorporated herein.

90.    In addition, the training policies of the COUNTY, ICSO, and NAPHCARE were not adequate to train their respective custody and medical staff, agents and employees to handle the usual and recurring situations with which they must deal with, including but not limited to encounters with individuals in pretrial custody who are experiencing medical emergencies. These Defendants and each of them knew that its failure to adequately train its COUNTY custody staff and NAPHCARE medical and mental health staff, including other agents and employees, to interact with individuals suffering from medical emergencies made it highly predictable that their custody, medical and mental health staff would engage in conduct that would deprive persons such as decedent Gustavo Silva, Jr., and thus Plaintiffs MARIA LUCILA, GUSTAVO SILVA, SR., YESIKA SILVA and GUSTAVO SILVA, JR. of their rights. These Defendants were thus deliberately indifferent to the obvious consequences of their failure to train their respective custody and medical staff, agents and employees adequately.

91.    Defendants COUNTY, ICSO, and NAPHCARE's official policies and/or longstanding practices or customs, including but not limited to its training policies, caused the deprivation of the constitutional rights of Plaintiffs MARIA LUCILA, GUSTAVO SILVA, SR., YESIKA SILVA and GUSTAVO SILVA, JR. and decedent Gustavo Silva, Jr. by each individual Defendant's official policies

**COMPLAINT FOR DAMAGES**

and/or longstanding practices or customs are so closely related to Gustavo Silva, Jr.'s injuries and death and thus the deprivation of the rights of Plaintiffs as to be the moving force causing those injuries.

92. Defendant SHERIFF MIRAMONTES, a final policymaker for the COUNTY and ICSO, ratified the actions and omissions of Defendants DOES 1 through 10, all of whom were custody, medical and mental health staff at the COUNTY Jails, including RADF, in that he had knowledge of and made a deliberate choice to approve their unlawful acts and omissions.

93. As a direct and proximate result of Defendants' conduct, the civil rights of Gustavo Silva, Jr., as protected by the Fourteenth Amendment of the United States Constitution were violated. Further, decedent Gustavo Silva, Jr. experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

94. Defendants subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

95. As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiffs sustained injuries and damages.

96. The conduct of Defendants entitles Plaintiffs to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiffs do not seek punitive damages against Defendants COUNTY.

97. Plaintiffs are also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

///

///

///

///

**COMPLAINT FOR DAMAGES**

## XII.

## <u>FOURTH CAUSE OF ACTION</u>

### Municipal Liability

### (*Monell* - 42 U.S.C. § 1983)

### By Plaintiff Estate of Gustavo Silva, Jr. As Against Defendants County of Imperial, Imperial County Sheriff's Office, and Naphcare, Inc.

98.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

99.   At all times relevant hereto, the COUNTY custody staff and NAPHCARE medical and mental health staff were required to adhere to and enforce the following policy and procedures:

a.   All COUNTY custody staff and NAPHCARE medical and mental health staff must consider suicide prevention as one of the highest priorities of service within the correctional setting;

b.   All must work together to identify inmates at risk for suicide;

c.   All COUNTY custody staff and NAPHCARE medical and mental health staff will have an outlined program for responding to suicidal individuals;

d.   All COUNTY custody staff and NAPHCARE medical and mental health staff must learn about an inmates' high-risk periods immediately upon admission to a facility;

e.   All COUNTY custody staff and NAPHCARE medical and mental health staff must learn about an inmates' high-risk periods after adjudication, when the inmate is returned to a facility from court;

f.   All COUNTY custody staff and NAPHCARE medical and mental health staff must learn about an inmate's high-risk periods following the receipt of bad news regarding self or family;

**COMPLAINT FOR DAMAGES**

g.    All COUNTY custody staff and NAPHCARE medical and mental health staff must learn about an inmates' high-risk periods after suffering from some type or form of humiliation, rejection or abuse;

h.    All COUNTY custody staff and NAPHCARE medical and mental health staff will review information of newly arriving inmates in this institution concerning issues related to suicide;

i.    All COUNTY custody staff and NAPHCARE medical and mental health staff conducting the intake personal screen will be continuously alert to suicidal behavior;

j.    All COUNTY custody staff and NAPHCARE medical and mental health staff will train their staff who work with inmates to recognize verbal and behavioral cues that indicate the potential for suicide;

k.    All COUNTY custody staff and NAPHCARE medical and mental health staff who recognize an inmate as being potentially suicidal are to request immediate evaluation of the patient;

l.    All assessments of potentially suicidal inmates are to be conducted by qualified mental health professionals, trained to determine an inmate's level of suicide risk;

m.    Inmates who have been determined to be suicidal should be placed/housed according to institutional policy and procedures for the monitoring of such individuals within the correctional setting;

n.    Regular documented supervision should be maintained;

o.    Inmates who have been determined to be suicidal should be placed/bound in the appropriate acute mental health housing;

p.    Suicidal inmates should not be housed alone, or left alone, unless constant supervision can be maintained. If constant supervision cannot be provided when needed, the inmate should be housed with another

27

**COMPLAINT FOR DAMAGES**

resident or in a dormitory and monitored by video camera by correctional staff;

q. The rooms should be as nearly suicide proof as possible and constant supervision by a staff member is preferable;

r. The procedures for referring potentially suicidal inmates and attempted suicides to mental health care providers or facilities should be clearly outlined;

s. Clear, current and accurate information regarding an inmate must be communicated between health care personnel and correctional personnel pursuant to the procedures of communication;

t. The intervention plan on how to handle a suicide that is in progress, including appropriate first aid measures, should be clearly outlined;

u. Procedures for notifying correctional administrators, outside authorities and family members of potential, fatal and non-fatal suicides will be in place;

v. Procedures for documenting the identification and monitoring of potential or attempted suicides will be detailed, as well as procedures for reporting a fatal suicide;

w. The suicide plan should specify the procedure for medical administrative review if a suicide does occur; and

x. A formal psychiatric/suicide review should take place following all successful suicides, or significant suicide attempts.

100. The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, as well as other employees or officers employed by or acting on behalf of the Defendants COUNTY, ICSO, and NAPHCARE, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of Defendants COUNTY, ICSO, and NAPCHARE, stated in the alternative, which were

28

**COMPLAINT FOR DAMAGES**

directed, encouraged, allowed, and/or ratified by policymaking officers for Defendant COUNTY, ICSO, and NAPHCARE:

    a.    To deny pretrial detainees and other inmates access to timely, appropriate, competent, and necessary care for serious medical and mental health needs, requiring such inmates in crisis to remain untreated in jail instead of providing for their emergency medical needs;

    b.    To allow and encourage deputies doing regular cell checks on inmates, including inmates housed in safety cells and administrative segregation cells, to fail to document their actual observations of the inmate's condition and status, in violation of the County of Imperial's written policies and state law;

    c.    To allow and encourage inadequate and incompetent medical and mental health care for jail inmates and arrestees;

    d.    To hire, retain and contract for obviously inadequate medical and mental health care for jail inmates and arrestees, including creating financial incentives for custody, medical and mental health staff not to send inmates with emergency medical needs to a hospital;

    e.    To allow, encourage, and require medical and mental health care staff, including licensed vocational nurses and registered nurses, to work outside their legal scope of practice and without appropriate supervision;

    f.    To fail to train custody staff that medical and mental health care staff, including licensed vocational nurses, are not competent to assess or decide inmates' medical conditions, medical needs, or whether the inmate should be permitted to remain in the jail versus being sent to a hospital;

    g.    To allow, encourage, and require unlicensed, incompetent, inadequately trained and/or inadequately supervised medical and mental health care staff to assess inmates' medical condition, needs, and treatment,

**COMPLAINT FOR DAMAGES**

including to decide whether or not to provide inmates with necessary emergency care and hospitalization, including psychiatric hospitalization;

h.  To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons in medical and mental health crisis;

i.  To cover up violations of constitutional rights by any or all of the following:

   i.   By failing to properly investigate and/or evaluate incidents of violations of rights, including by unconstitutional medical and mental health care at the jail;

   ii.  By ignoring and/or failing to properly and adequately investigate and/or investigate and discipline unconstitutional or unlawful conduct by custody, medical and mental health staff;

   iii. By turning a blind eye to custody, medical and mental health staff who direct, aid, and/or assist with the distribution of hazards, including illicit drugs, into the Imperial County jails; and

   iv.  By allowing, tolerating, and/or encouraging custody, medical and mental health staff to: fail to file complete and accurate reports; file false reports; make false statements; and/or obstruct or interfere with investigations of unconstitutional or unlawful conduct by withholding and/or concealing material information;

j.  To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers, ICSO personnel, COUNTY custodial personnel and NAPHCARE medical and mental health staff at the jail whereby an officer or member of the ICSO, or NAPHCARE medical staff or mental health staff does not provide adverse information against a fellow officer, or member of the ICSO or NAPHCARE medical staff;

30

**COMPLAINT FOR DAMAGES**

k.   To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (j) above, with deliberate indifference to the rights and safety of pretrial detainees, such as Decedent, and in the face of an obvious need for such policies, procedures, and training programs.

101.   The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, as well as other officers employed by or acting on behalf of the COUNTY, ICSO, and NAPHCARE, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of the COUNTY, ICSO, and NAPHCARE, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for the COUNTY, ICSO, and NAPHCARE including SHERIFF MIRAMONTES, JUAN CHAVARIN, and ROBERT WILSON:

a.   To fail to properly and adequately hire, train, supervise, and monitor custody, medical and mental health staff at the jails;

b.   To fail to use appropriate and generally accepted law enforcement procedures for handling persons in medical and mental health crisis;

c.   To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons in medical and mental health crisis;

d.   To cover up violations of constitutional rights by any or all of the following:

i.   By failing to properly investigate and/or evaluate complaints or incidents of handling of persons in medical and mental health crisis;

31

**COMPLAINT FOR DAMAGES**

ii.      By ignoring and/or failing to properly and adequately investigate and/or discipline unconstitutional or unlawful law enforcement activity; and

iii.      By allowing, tolerating, and/or encouraging law enforcement officers to: fail to file complete and accurate reports; file false reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful law enforcement conduct by withholding and/or concealing material information;

e.      To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers whereby an officer does not provide adverse information against a fellow law enforcement officer;

f.      To allow, tolerate, and/or encourage a "code of silence" among custody, medical and mental health staff at the COUNTY jails whereby custody, medical and mental health staff does not provide adverse information against one another;

g.      To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (g) above, with deliberate indifference to the rights and safety of pretrial detainees, such as Decedent, and in the face of an obvious need for such policies, procedures, and training programs.

102.   Defendants COUNTY, ICSO, and NAPHCARE, through their employees and agents, and through their policy-making supervisors, SHERIFF MIRAMONTES, JUAN CHAVARIN, ROBERT WILSON and DOES 8 through 10, failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants  DOES 1 through 10, and other COUNTY, ICSO, and

**COMPLAINT FOR DAMAGES**

NAPHCARE personnel, with deliberate indifference to the constitutional rights of decedent Gustavo Silva, Jr., Plaintiffs and others in similar positions, as described above, and therefore, those rights thereby violated.

103. The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, and other ICSO custody and NAPHCARE medical and mental health staff, as described above, were approved, tolerated, and/or ratified by policymaking officers for the COUNTY, ICSO, and NAPHCARE including Defendants SHERIFF MIRAMONTES, JUAN CHAVARIN, ROBERT WILSON and DOES 8 through 10. Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to the authorized policymakers within the COUNTY, ICSO, and NAPHCARE, and that such policymakers have direct knowledge of the fact that the death of Gustavo Silva, Jr. was the result of deliberate indifference to his rights to be protected and safe while in the custody of the COUNTY/ICSO, and his rights to have access to medical care when suffering a medical emergency. Notwithstanding this knowledge, the authorized policymakers within the COUNTY, ICSO, and NAPHCARE have approved of the conduct and decisions of Defendants DOES 1 through 10 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of Gustavo Silva, Jr. By so doing, the authorized policymakers within the COUNTY, ICSO, and NAPHCARE have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiffs are informed and believe, and thereupon allege, that Defendants SHERIFF MIRAMONTES, JUAN CHAVARIN, ROBERT WILSON and DOES 8 through 10, and other policy-making officers and supervisors for the COUNTY, ICSO, and NAPHCARE were and are aware of a pattern of misconduct and injury caused by COUNTY Jails custody staff and NAPHCARE medical and mental health staff similar to the conduct of Defendants described herein, but failed to

**COMPLAINT FOR DAMAGES**

discipline culpable custody, medical and mental health staff and failed to institute new procedures and policy within the COUNTY, ICSO, and NAPHCARE.

104.    The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants COUNTY, ICSO, and NAPHCARE were a moving force and/or a proximate cause of the deprivations of decedent Gustavo Silva, Jr.'s clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983. Defendants subjected decedent Gustavo Silva, Jr. to their wrongful conduct, depriving decedent Gustavo Silva, Jr. of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of decedent Gustavo Silva, Jr., Plaintiffs and others would be violated by their acts and/or omissions.

105.    As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants COUNTY, ICSO, and NAPHCARE, as described above, decedent Gustavo Silva, Jr. suffered serious injuries and death, Plaintiff is entitled to damages, penalties, costs, and attorneys' fees against Defendants COUNTY, ICSO, and NAPHCARE.

## XIII.

## FIFTH CAUSE OF ACTION

**Supervisory Liability Causing Constitutional Violations,**

**(Failure to Properly Train, Supervise and Discipline, 42 U.S.C. § 1983)**

**By Plaintiff Estate of Gustavo Silva, Jr. As Against Defendants Sheriff Miramontes, Juan Chavarin, Robert Wilson, and DOES 8 through 10**

106.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

107.    At all material times, SHERIFF MIRAMONTES, JUAN CHAVARIN, ROBERT WILSON and DOES 8 through 10 had the duty and responsibility to

34

COMPLAINT FOR DAMAGES

constitutionally hire, train, instruct, monitor, supervise, evaluate, investigate, staff, and discipline the other Defendants employed by their respective agencies in this matter, as well as all employees and agents of the COUNTY and ICSO.

108.   Defendants SHERIFF MIRAMONTES, JUAN CHAVARIN, ROBERT WILSON and DOES 8 through 10 failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline the respective employees of their agencies, including Defendants DOES 1 through 10, and other COUNTY, ICSO, and NAPHCARE personnel, with deliberate indifference to Plaintiffs', decedent Gustavo Silva, Jr.'s, and others' constitutional rights, which were thereby violated as described above.

109.   As supervisors, Defendants SHERIFF MIRAMONTES, JUAN CHAVARIN, ROBERT WILSON and DOES 8 through 10 each permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights to safety and protections while incarcerated at RADF and the rights to the serious medical and mental health needs of decedent Gustavo Silva, Jr.. Each of these supervising Defendants either directed his or her subordinates in conduct that violated Decedent's rights, or set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive decedent Gustavo Silva, Jr. of rights, or knew his or her subordinates were engaging in acts likely to deprive decedent Gustavo Silva, Jr. of rights and failed to act to prevent his or her subordinate from engaging in such conduct, or disregarded the consequence of a known or obvious training deficiency that he or she must have known would cause subordinates to violate decedent Gustavo Silva, Jr.'s rights, and in fact did cause the violation of decedent Gustavo Silva, Jr.'s rights. (*See*, Ninth Circuit Model Civil Jury Instruction 9.4). Furthermore, each of these supervising Defendants is liable in their failures to intervene in their subordinates' apparent violations of decedent Gustavo Silva, Jr' rights.

**COMPLAINT FOR DAMAGES**

110. The unconstitutional customs, policies, practices, and/or procedures of Defendants COUNTY, ICSO, and NAPHCARE, as stated herein, were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendants COUNTY, ICSO, and NAPHCARE, including Defendants SHERIFF MIRAMONTES, JUAN CHAVARIN, ROBERT WILSON and DOES 8 through 10, respectively, with deliberate indifference to Plaintiff's, decedent Gustavo Silva, Jr's, and others' constitutional rights, which were thereby violated as described above.

111. The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, and other COUNTY, ICSO, and NAPHCARE personnel, as described above, were approved, tolerated, and/or ratified by policymaking officers for the COUNTY, ICSO, and NAPHCARE, including Defendants SHERIFF MIRAMONTES, JUAN CHAVARIN, ROBERT WILSON and DOES 8 through 10. Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to Defendants SHERIFF MIRAMONTES, JUAN CHAVARIN, ROBERT WILSON and DOES 8 through 10 and that such Defendant-policymakers have direct knowledge of the fact that the death of decedent Gustavo Silva, Jr. was not justified or necessary, but represented deliberate indifference to his rights to be protected and safe while in the COUNTY's custody and his rights to his serious medical and mental health needs, as set forth above. Notwithstanding this knowledge, on information and belief, Defendants SHERIFF MIRAMONTES, JUAN CHAVARIN, ROBERT WILSON and DOES 8 through 10 have approved and ratified the conduct and decisions of Defendants DOES 1 through 6 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of Gustavo Silva, Jr.. By so doing, Defendants SHERIFF MIRAMONTES, JUAN CHAVARIN, ROBERT WILSON and DOES 8 through 10 have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiffs are informed and believe, and thereupon allege,

COMPLAINT FOR DAMAGES

that Defendants SHERIFF MIRAMONTES, JUAN CHAVARIN, ROBERT WILSON and DOES 8 through 10 and other policymaking officers for the COUNTY, ICSO, and NAPHCARE were and are aware of a pattern of misconduct and injury, and a code of silence, caused by COUNTY, ICSO custody staff, and NAPHCARE medical and mental health personnel similar to the conduct of Defendants described herein, but failed to discipline culpable law enforcement officers and employees and failed to institute new procedures and policy within the COUNTY, ICSO, and NAPHCARE.

112.    The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants SHERIFF MIRAMONTES, JUAN CHAVARIN, ROBERT WILSON, and DOES 8 through 10 were a moving force and/or a proximate cause of the deprivations of decedent 's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983, as more fully set forth above.

113.    Defendants subjected decedent Gustavo Silva, Jr. to their wrongful conduct, depriving decedent Gustavo Silva, Jr. of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of decedent Gustavo Silva, Jr. and others would be violated by their acts and/or omissions.

114.    As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants SHERIFF MIRAMONTES, JUAN CHAVARIN, ROBERT WILSON and DOES 8 through 10 as described above, Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorneys' fees.

///

///

37

**COMPLAINT FOR DAMAGES**

## XIV.

## SIXTH CAUSE OF ACTION

### Negligence – (Survival & Wrongful Death)

### Plaintiffs As Against All Defendants and DOES 1 through 10

115.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

116.   At all times, Defendants DOES 1 through 10 owed Plaintiffs and decedent Gustavo Silva, Jr. the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

117.   At all times, these Defendants owed Plaintiffs and decedent Gustavo Silva, Jr. the duty to act with reasonable care.

118.   These general duties of reasonable care and due care owed to Plaintiffs and decedent Gustavo Silva, Jr. by these Defendants include but are not limited to the following specific obligations:

    a.    To summon, or transport Decedent to, necessary and appropriate emergency medical and mental health care;

    b.    To refrain from unreasonably creating danger or increasing Decedent's risk of harm;

    c.    To use generally accepted law enforcement procedures and tactics that are reasonable and appropriate for Decedent's status as a person in medical and mental health crisis with serious medical and mental health needs;

    d.    To conduct state mandated safety and welfare checks of inmates in the custody of the COUNTY Jails;

    e.    To refrain from abusing their authority granted them by law; and

    f.    To refrain from violating Plaintiffs' and Decedent's rights as guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

COMPLAINT FOR DAMAGES

119. Defendants DOES 1 through 10, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiffs and decedent Gustavo Silva, Jr.

120. Defendants COUNTY and ICSO are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

121. Defendant NAPHCARE is vicariously liable for the violations of state law and conduct of their medical providers, including individual named defendants, under the doctrine of *respondeat superior*.

122. As a direct and proximate result of these Defendants' negligence, Plaintiffs and decedent Gustavo Silva, Jr. sustained injuries and damages, and against each and every Defendant named in this cause of action in their individual capacities are entitled to relief, including punitive damages against such individual Defendants.

**XV.**

**<u>SEVENTH CAUSE OF ACTION</u>**

**Medical Malpractice (Survival & Wrongful Death)**

**Plaintiffs As Against NaphCare, Inc. and**

**DOES 1 through 10**

123. Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

124. Decedent Gustavo Silva, Jr. was under the care and treatment of Defendants DOES 1 through 10, all of whom were NAPHCARE medical staff assigned to the COUNTY Jails, including RADF, who were required to examine, treat, monitor, prescribe for and care for him and to provide him with medical attention when he suffered a medical emergency. These Defendants, acting within the scope and course of their employment with Defendants NAPHCARE, negligently, carelessly and unskillfully cared for, attended, handled, controlled; failed to monitor and follow-up; abandoned; failed to classify, failed to appropriately diagnose and/or

**COMPLAINT FOR DAMAGES**

refer decedent Gustavo Silva, Jr. to specialist medical care providers; negligently failed to provide physician care; negligently failed to provide psychiatry care; carelessly failed to detect, monitor, and follow-up with his condition; and negligently, carelessly and unskillfully failed to possess and exercise that degree of skill and knowledge ordinarily possessed and exercised by others in the same profession and in the same locality as Defendants for the benefit of their patient and dependent pre-trial detainee Gustavo Silva, Jr..

125. Defendant supervisors and each of them failed to supervise, train and monitor their subordinates, to maintain proper supervision, classification and staffing, to timely provide decedent Gustavo Silva, Jr. emergency medical and mental health care, failed to provide adequate and competent staffing, and to ensure the care and treatment ordered for decedent Gustavo Silva, Jr. was provided.

126. As a direct and legal result of the aforesaid negligence and carelessness of Defendants' actions and omissions, Plaintiffs sustained injuries and damages, and against these Defendants, and each of them, are entitled to compensatory damages and as applicable to this claim for Medical Negligence, to be proven at time of trial.

127. As a direct and proximate result of these Defendants' negligence, Plaintiffs and decedent Gustavo Silva, Jr. sustained injuries and damages, and against each and every Defendant named in this cause of action in their individual capacities are entitled to relief, including punitive damages against such individual Defendants.

128. Defendant NAPHCARE is vicariously liable for the violations of state law and conduct of their medical providers, including individual named defendants, under the doctrine of *respondeat superior*.

///

///

///

///

///

**COMPLAINT FOR DAMAGES**

## XVI.

## EIGHTH CAUSE OF ACTION

### Violation of California Government Code § 845.6

### (Survival & Wrongful Death)

### Plaintiffs As Against All Defendants

### and DOES 1 through 10

129. Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

130. Defendants DOES 1 through 10 knew that Gustavo Silva, Jr. was in need of immediate medical care and treatment, and each failed to take reasonable action to summon immediate medical care and treatment. Each such individual defendant, employed by and acting within the course and scope of his/her employment with Defendants COUNTY and ICSO, knowing and/or having reason to know of decedent Gustavo Silva. Jr.'s need for immediate medical care and treatment, failed to take reasonable action to summon such care and treatment in violation of California Government Code § 845.6.

131. Defendants COUNTY and ICSO are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

132. As a direct and proximate result of the aforementioned acts of these Defendants, decedent Gustavo Silva, Jr. was injured as set forth above, and their losses entitle Plaintiff to all damages allowable under California law. Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorney fees under California law, including punitive damages against these individual Defendants.

133. As a direct and proximate result of these Defendants' negligence, Plaintiffs and decedent Gustavo Silva, Jr. sustained injuries and damages, and against

41

**COMPLAINT FOR DAMAGES**

each and every Defendant named in this cause of action in their individual capacities are entitled to relief, including punitive damages against such individual Defendants.

## XVI.

## NINTH CAUSE OF ACTION

**Violation of California Civil Code §52.1**

**(Tom Bane Act – Survival Action)**

**Plaintiff Estate of Gustavo Silva, Jr. As Against All Defendants**

**and DOES 1 through 10**

134.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

135.   Plaintiff brings the claims in this cause of action as a survival claim permissible under California law, including Cal. Code of Civ. Proc. § 377.20 *et. seq*.

136.   By their acts, omissions, customs, and policies, Defendants, each acting in concert/conspiracy, as described above, while decedent Gustavo Silva, Jr was in custody, and by threat, intimidation, and/or coercion, interfered with, attempted to interfere with, and violated Gustavo Silva, Jr.'s rights under California Civil Code § 52.1 and under the United States Constitution and California Constitution as follows:

a.   The right to be free from objectively unreasonable treatment and deliberate indifference to Decedent's serious medical needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth Amendments to the United States Constitution and by California Constitution, Article 1, §§ 7 and 13;

b.   The right for the familial association to be free from government interference as secured by the Fourteenth Amendments to the United States Constitution;

c.   The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, § 1; and

42

**COMPLAINT FOR DAMAGES**

d.    The right to emergency medical and mental health care as required by California Government Code §845.6.

137.    Defendants' violations of decedent Gustavo Silva, Jr.'s due process rights with deliberate indifference, in and of themselves constitute violations of the Bane Act.1[2] Alternatively, separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of Gustavo Silva, Jr.'s rights as described above, Defendants violated Gustavo Silva, Jr.'s rights by the following conduct constituting threat, intimidation, or coercion:

a.    With deliberate indifference to Decedent's serious medical and mental health needs, suffering, and risk of grave harm including death, depriving Decedent of necessary, life-saving care for his medical needs;

b.    With deliberate indifference to hazards that posed a risk to pretrial detainees, such as Decedent;

c.    Subjecting Decedent to ongoing violations of his rights to prompt care for his serious medical and mental health needs over days, causing immense and needless suffering, intimidation, coercion, and threats to his life and well-being;

d.    Deliberately contracting for and causing the provision of inadequate and incompetent medical health care to Imperial County jail detainees and inmates;

e.    Requiring medical and mental health staff to work outside their scope of practice, and conduct assessments, triage, and make medical and housing decisions for patients, including Decedent, they are not competent to make; and

---

[2] *See Atayde v. Napa State Hosp.*, No. 1:16-cv-00398-DAD-SAB, 2016 U.S. Dist. LEXIS 126639, at *23 (E.D. Cal. Sept. 16, 2016) (citing *M.H. v. Cty. of Alameda*, 90 F. Supp. 3d 889, 899 (N.D. Cal. 2013); *see also, Cornell v. City and County of San Francisco*, Nos. A141016, A142147, 2017 Cal. App. LEXIS 1011 at *58, f.n. 32 (Cal. Ct. App. Nov. 16, 2017) (approving M.H., supra.); *Reese v. County of Sacramento*, 888 F.3d 1030, 1043-44 (9th Cir. 2018) (following *Cornell*); *Rodriguez v. County of L.A.,* 891 F.3d 776, 799, 802 (9th Cir. 2018) (following *Cornell*).

**COMPLAINT FOR DAMAGES**

f.      Instituting and maintaining the unconstitutional customs, policies, and practices described herein, when it was obvious that in doing so, individuals such as Decedent would be subjected to violence, threat, intimidation, coercion, and ongoing violations of rights as Decedent was here.

138.    The threat, intimidation, and coercion described herein were not necessary or inherent to Defendants' violation of decedent Gustavo Silva, Jr.'s rights, or to any legitimate and lawful jail or law enforcement activity.

139.    Further, all of Defendants' violations of duties and rights, and coercive conduct, described herein were volitional acts; none was accidental or merely negligent.

140.    Further, each Defendant violated decedent Gustavo Silva, Jr.'s rights reckless disregard and with the specific intent and purpose to deprive him of his enjoyment of those rights and of the interests protected by those rights.

141.    Defendant COUNTY is vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

142.    Defendant NAPHCARE is vicariously liable for the violations of state law and conduct of their medical providers, including individual named defendants, under the doctrine of *respondeat superior*.

143.    As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of decedent Gustavo Silva, Jr.'s rights under the United States and California Constitutions, Plaintiff sustained injuries and damages, and against each and every Defendant is entitled to relief, including punitive damages against all individual Defendants and NAPHCARE, and all damages allowed by California Civil Code §§ 52 and 52.1 and California law, not limited to costs attorneys' fees, and civil penalties.

///

44

**COMPLAINT FOR DAMAGES**

# XVIII.

## TENTH CAUSE OF ACTION

### Violation of the Americans With Disability Act of 1990

### (42 U.S.C 12101, *et seq.*)

**Plaintiff Estate of Gustavo Silva, Jr. As Against Defendants DOES 1 through 10**

144.   Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

145.   Pursuant to 42 U.S.C. § 12132, "Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

146.   Under Title II of the Americans with Disability Act, the COUNTY, ICSO, and NAPHCARE are required to make reasonable modifications to avoid discrimination on the basis of disability. The ADA sets an affirmative requirement to act appropriately with respect to prisoners with mental disabilities.

147.   ADA creates an affirmative duty in some circumstances to provide special, preferred treatment, or "reasonable accommodation."

148.   Facially neutral policies may violate the ADA when such policies unduly burden disabled persons, even when such policies are consistently enforced.

149.   Discrimination includes a defendant's failure to make reasonable accommodations to the needs of a disabled person based on his physical health. These accommodations include training on how to deal with the physically and mentally ill, specialized training of COUNTY and NAPHCARE staff, heightened level of medical care, and diligent surveillance.

150.   Upon information and belief, Decedent Gustavo Silva, Jr. was a disabled individual suffering from a mental disability, an impairment that substantially limited one or more major life activities. Decedent Gustavo Silva, Jr. was a "qualified

**COMPLAINT FOR DAMAGES**

individual with a disability" for purposes of the Americans with Disabilities Act and the Rehabilitation Act.

151. The COUNTY, ICSO, and NAPHCARE are subject to the Americans with Disabilities Act and the Rehabilitation Act.

152. A person has a disability if he/she has a physical or mental impairment that substantially limits one or more major life activities, a record of such impairment, or is regarded as having impairment.

153. Defendants COUNTY, ICSO, and NAPHCARE denied Decedent Gustavo Silva, Jr. benefits of the services, programs or activities of the COUNTY and ICSO because of his disability and subjected him to discrimination. More precisely, upon information and belief, Defendants COUNTY, ICSO, and NAPHCARE denied Decedent Gustavo Silva, Jr. benefits by not allowing Gustavo Silva, Jr. to engage in programs, services, and activities which would accommodate his mental disabilities.

154. Defendant COUNTY, ICSO, and NAPHCARE failed to make reasonable accommodations to Decedent Gustavo Silva, Jr.'s medical needs based on his mental health condition. The failure to provide critical medical services was a denial of the services program or activity based on his disability.

155. Defendant COUNTY, ICSO, and NAPHCARE denied Gustavo Silva, Jr. medical treatment by failing to provide Gustavo Silva, Jr. with treatment for his mental health condition, thereby failing to accommodate Decedent Gustavo Silva, Jr.'s disability, and denying him a service, benefit, or program.

156. Defendants COUNTY, ICSO, and NAPHCARE were deliberately indifferent to Decedent Gustavo Silva, Jr.'s serious medical condition. Defendants COUNTY, ICSO, and NAPHCARE had actual knowledge of the substantial risk of harm to Decedent Gustavo Silva, Jr. from his serious diagnosed condition and they responded with deliberate indifference by failing to communicate or document his condition; failing to place him in medical where he could be watched; and failing to provide him medical care when Decedent Gustavo Silva, Jr. was in medical distress.

**COMPLAINT FOR DAMAGES**

157.   The regulations promulgated by the Department of Justice to implement Part A of Title II of the ADA require each government entity to conduct a self-evaluation of its programs and services (or the lack thereof) related to persons with disabilities:

(a) A public entity shall, within one year of the effective date of this part [that is, by January 26, 1993], evaluate its current services, policies, and practices, and the effects thereof, that do not or may not meet the requirements of this part and, to the extent modification of any such services, policies, and practices is required, the public entity shall proceed to make the necessary modifications.

(b) A public entity shall provide an opportunity to interested persons, including individuals with disabilities or organizations representing individuals with disabilities, to participate in the self-evaluation process by submitting comments.

158.   Defendants COUNTY, ICSO, and NAPHCARE failed to conduct any self-evaluation of procedures and training for its personnel about how to handle encounters with persons who have a physical illness or another disability.

159.   Defendants COUNTY, ICSO, and NAPHCARE violated Decedent Gustavo Silva, Jr.'s clearly established rights under the ADA with deliberate indifference.

160.   The violation of Decedent Gustavo Silva, Jr.'s rights resulted from a COUNTY, ICSO, and NAPHCARE policy or custom adopted or maintained with deliberate indifference.

161.   As a direct and proximate result of the Defendants COUNTY, ICSO, and NAPHCARE conduct as herein described, Decedent Gustavo Silva, Jr. suffered damages in the amount to be determined at the time of trial.

///

///

///

///

**COMPLAINT FOR DAMAGES**

## XIX.

## ELEVENTH CAUSE OF ACTION

### Violation of the Rehabilitation Act

### (29 U.S.C. §704(a))

**Plaintiff Estate of Gustavo Silva, Jr. As Against Defendants DOES 1 through 10**

162. Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

163. The Rehabilitation Act of 1973 ("Section 504") states in pertinent part, provides that "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794(a).

164. Defendants COUNTY, ICSO, and NAPHCARE are programs that receive federal financial assistance as defined in 29 U.S.C. § 794(b).

165. Decedent Gustavo Silva, Jr. was a "qualified individual with a disability" under the Rehabilitation Act.

166. Defendants COUNTY, ICSO, and NAPHCARE violated the Rehabilitation Act by failing to make reasonable accommodations to the needs of Decedent Gustavo Silva, Jr., a disabled person. It was a reasonable accommodation to provide him with needed medical care.

167. Employees of COUNTY, ICSO, and NAPHCARE were deliberately indifferent to Decedent Gustavo Silva, Jr.'s serious medical condition. They failed to consider obvious symptoms of Decedent Gustavo Silva, Jr.'s mental health condition.

168. Instead of providing Decedent Gustavo Silva, Jr. with adequate medical services and fair treatment, Defendants COUNTY, ICSO, and NAPHCARE refused to provide him with medical care as his condition deteriorated.

169. Defendants COUNTY, ICSO, and NAPHCARE failed to accommodate Decedent Gustavo Silva, Jr. with the services and programs available to patients with

**COMPLAINT FOR DAMAGES**

a medical condition. There were medical services readily available to Decedent Gustavo Silva, Jr., but Defendants COUNTY, ICSO, and NAPHCARE failed to properly house Decedent Gustavo Silva, Jr. where Decedent Gustavo Silva, Jr. could be monitored and humanely cared for.

170. Defendants COUNTY, ICSO, and NAPHCARE knew of the substantial risk of harm to Decedent Gustavo Silva, Jr. from his serious, diagnosed condition and they responded with deliberate indifference by failing to communicate or document his condition; failing to place him where he could be watched; and failing to provide him medical care when Decedent Gustavo Silva, Jr. was in medical distress.

171. Defendants COUNTY, ICSO, and NAPHCARE violated the Rehabilitation Act by failing to conduct any self-evaluation of procedures and training for its personnel about how to handle communications with jails regarding patients who have a physical medical condition or another disability.

172. Defendants COUNTY, ICSO, and NAPHCARE violated the Rehabilitation Act by failing to conduct any self-evaluation of procedures and training for its personnel about how to handle encounters with persons who have a physical medical condition or another disability.

173. As a direct and proximate result of the Defendants COUNTY, ICSO, and NAPHCARE conduct as herein described, Decedent Gustavo Silva, Jr. suffered damages in the amount to be determined at the time of trial.

## XX.

## REQUEST FOR RELIEF

Wherefore, Plaintiffs respectfully request that the Court enter a judgment as follows:

A. Wrongful death of Gustavo Silva, Jr., pursuant to Cal. Code of Civ. Proc. § 377.60 et. seq.;

B.   Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support, pursuant to Cal. Code of Civ. Proc. § 377.60 et. seq.;

C.   Gustavo Silva, Jr.'s coroner's fees, funeral and burial expenses, pursuant to Cal. Code of Civ. Proc. § 377.20 et. seq.;

D.   Violation of Gustavo Silva, Jr.'s constitutional rights, pursuant to Cal. Code of Civ. Proc. § 377.20 et. seq. and federal civil rights law;

E.   Gustavo Silva, Jr.'s loss of life, pursuant to federal civil rights law;

F.   Gustavo Silva, Jr.'s conscious pain, suffering, and disfigurement, pursuant to federal civil rights law;

G.   General Damages, including wrongful death and survival damages, in excess of the mandatory amount for jurisdiction in the Unlimited Superior Court;

H.   Non-Economic Damages, including wrongful death and survival damages, according to proof plus all further and proper relief;

I.   Punitive damages as to the individual defendants;

J.   Attorney's fees pursuant to State Law (Cal. Code Civ. Proc. § 1021.5 & private attorney general doctrine);

K.   A multiplier of damages, including treble damages, and penalties under the Tom Bane Act;

L.   Interest; and

///
///
///
///
///
///
///

50

**COMPLAINT FOR DAMAGES**

M.     All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil Procedure §§ 377.20 et seq., 377.60 et seq., and 1021.5; California Civil Code §§ 52 et seq., 52.1; and as otherwise may be allowed by California and/or federal law.

Dated: May 20, 2025           GASTÉLUM LAW, APC

By: _Denisse O. Gastélum_____
Denisse O. Gastélum, Esq.
Attorneys for Plaintiffs,
ESTATE OF GUSTAVO SILVA, JR., by and through successors in interest, Maria Lucila, Gustavo Silva Sr., Yesika Silva, and Gustavo Silva Jr.;
MARIA LUCILA, individually; GUSTAVO SILVA, SR., individually; YESIKA SILVA, individually; GUSTAVO SILVA, JR., individually

Dated: May 20, 2025           **LAW OFFICES OF CHRISTIAN CONTRERAS**
**A PROFESSIONAL LAW CORPORATION**

By: _____
Christian Contreras, Esq.
Attorneys for Plaintiffs,
ESTATE OF GUSTAVO SILVA, JR., by and through successors in interest, Maria Lucila, Gustavo Silva Sr., Yesika Silva, and Gustavo Silva Jr.;
MARIA LUCILA, individually; GUSTAVO SILVA, SR., individually; YESIKA SILVA, individually; GUSTAVO SILVA, JR., individually

51

**COMPLAINT FOR DAMAGES**

## DEMAND FOR JURY TRIAL

Plaintiffs, ESTATE OF GUSTAVO SILVA, JR., by and through successors in interest, Maria Lucila, Gustavo Silva Sr., Yesika Silva, and Gustavo Silva Jr.; MARIA LUCILA, individually; GUSTAVO SILVA, SR., individually; YESIKA SILVA, individually; GUSTAVO SILVA, JR., individually

Dated: May 20, 2025          GASTÉLUM LAW, APC

By: _____
Denisse O. Gastélum, Esq.
Attorneys for Plaintiffs,
ESTATE OF GUSTAVO SILVA, JR., by and through successors in interest, Maria Lucila, Gustavo Silva Sr., Yesika Silva, and Gustavo Silva Jr.; MARIA LUCILA, individually; GUSTAVO SILVA, SR., individually; YESIKA SILVA, individually; GUSTAVO SILVA, JR., individually

Dated: May 20, 2025          **LAW OFFICES OF CHRISTIAN CONTRERAS**
                             **A PROFESSIONAL LAW CORPORATION**

By: _____
Christian Contreras, Esq.
Attorneys for Plaintiffs,
ESTATE OF GUSTAVO SILVA, JR., by and through successors in interest, Maria Lucila, Gustavo Silva Sr., Yesika Silva, and Gustavo Silva Jr.; MARIA LUCILA, individually; GUSTAVO SILVA, SR., individually; YESIKA SILVA, individually; GUSTAVO SILVA, JR., individually

**COMPLAINT FOR DAMAGES**