UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF GUSTAVO SILVA, JR., by and through successors in interest, MARIA LUCILA, GUSTAVO SILVA SR., YESIKA SILVA, and GUSTAVO SILVA JR.; MARIA LUCILA, individually; GUSTAVO SILVA, SR., individually; YESIKA SILVA, individually; GUSTAVO SILVA, JR., individually, | Case No.:  3:25-cv-1295-JES-MMP  **ORDER GRANTING MOTIONS TO DISMISS**  **[ECF Nos. 14, 15]** |

Plaintiffs,

v.

COUNTY OF IMPERIAL, a public entity; IMPERIAL COUNTY SHERIFFS OFFICE; SHERIFF FRED MIRAMONTES, in his individual and official capacities; CORRECTIONAL CAPTAIN JUAN CHAVARIN, individually; CORRECTIONAL LIEUTENANT ROBERT WILSON, individually; NAPHCARE INC., an Alabama Corporation; DOES 1-10, individually, jointly and severally,

Defendants.

//

1

## I.    INTRODUCTION

This case originates from the tragic death of Gustavo Silva Jr. while in custody at the Imperial County Sheriff's Office Regional Adult Detention Facility. Gustavo Silva Jr. was arrested and placed in custody on January 21, 2024. He died by suicide the very next day, January 22, 2024. Gustavo Silva Jr.'s parents and surviving children bring this case against the County of Imperial, Imperial County Sheriff's Office, NaphCare and several individual Defendants. The Plaintiffs argue that Gustavo Silva Jr. was suffering from mental health issues and suicidal ideation that the Defendants should have been aware of and monitored to prevent his suicide. The Court acknowledges the pain the Plaintiffs are suffering from the loss of their loved one. However, the complaint fails to state a cause of action against any of the Defendants as it contains nothing but conclusory language to describe the signs that gave notice to Defendants that Gustavo Silva Jr. was suffering from suicidal ideation prior to his death, and the statute of limitations has passed preventing the estate from bringing any claims for medical malpractice. For those reasons, the Court **GRANTS** the motions to dismiss each cause of action.

## II.    BACKGROUND

### A. Procedural Background

Plaintiffs Maria Lucila, Gustavo Silva, Sr., Yeshika Silva, and Gustavo Silva, Jr., individually and on behalf of the Estate of Gustavo Silva, Jr., as successors in interest, (collectively, "Plaintiffs") bring this suit against Defendants NaphCare ("NaphCare"), and Defendants County of Imperial, Imperial County Sheriff's Office, Sheriff Fred Miramontes, ("Sheriff Miramontes") Correctional Captain Juan Chavarin ("Capt. Chavarin"), Correctional Lieutenant Robert Wilson ("Lt. Wilson," collectively "County Defendants"), and Does 1-10 (collectively, including NaphCare, County Defendants, and Does 1-10, "Defendants") arising from the death of Gustavo Silva, Jr., ("Decedent") by suicide in custody. ECF No. 1 ("Compl."). NaphCare and County Defendants each filed motions to dismiss this action, which were fully briefed by the parties. See ECF Nos. 14,

3:25-cv-1295-JES-MMP

15, 16, 19, 24, 25. The Court considers the motions together here for consistency across common issues.

### B. Factual Background

On January 21, 2024, Decedent was arrested and placed in custody at the Imperial County Sheriff's Office Regional Adult Detention Facility ("RADF") located in El Centro, California. Compl. ¶ 32. Plaintiffs allege that Decedent completed a preliminary medical and psychological screening and was placed in the general population of the jail. *Id.* ¶¶ 33-34. Plaintiffs allege that Decedent was showing clear signs of mental health issues and acute suicidality. *Id.* ¶¶ 34-35. Plaintiffs allege that Defendants had the opportunity to observe these symptoms and acted with indifference towards Decedent's dire need for medical intervention. *Id.* ¶¶ 35-36. On January 22, 2024, Decedent died by suicide in custody at RADF through self-asphyxiation. *Id.* ¶¶ 37, 57; *see also* ECF No. 14-1 at 6.

The current suit is brought by Decedent's mother, Maria Lucila; his father, Gustavo Silva, Sr.; his daughter, Yesika Silva; and his son, Gustavo Silva, Jr., on behalf of themselves and Decedent's estate. Compl. ¶¶ 12-16. They bring this suit against County Defendants, who they allege were responsible for operations at RADF; NaphCare, a corporation they allege was the exclusive provider of medical and mental health care at RADF at the time of Decedent's death; and ten unnamed Doe Defendants, representing individual employees of County Defendants and/or NaphCare who Plaintiffs believe are responsible in whole or part for Decedent's death. *Id.* ¶¶ 17-31. Plaintiffs bring eleven causes of action against Defendants: (1) failure to protect from harm in violation of 42 U.S.C. § 1983, against Does 1-10; (2) failure to provide medical care in violation of 42 U.S.C. § 1983, against Does 1-10; (3) deprivation of right to familial relationship, in violation of 42 U.S.C. § 1983, against Does 1-10; (4) municipal liability, in violation of 42 U.S.C. § 1983, against County of Imperial, Imperial County Sheriff's Office and NaphCare; (5) supervisory liability for failure to train, supervise and discipline, in violation of 42 U.S.C. § 1983, against Sheriff Miramontes, Capt. Chavarin, Lt. Wilson and Does 8-10; (6) negligence, against all Defendants and Does 1-10; (7) medical malpractice against

3:25-cv-1295-JES-MMP

NaphCare and Does 1-10; (8) violation of California Government Code § 845.6, against all Defendants and Does 1-10; (9) violation of the Bane Act, against all Defendants and Does 1-10; (10) violation of the Americans with Disabilities Act ("ADA"), against Does 1-10; and (11) violation of the Rehabilitation Act, against Does 1-10. *Id.* ¶¶ 58-173.

### III.   LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure ("FRCP") 12(b)(6) for failure to state a claim tests the legal sufficiency of a plaintiff's claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When considering the motion, the court must accept as true all well-pleaded factual allegations in the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court need not accept as true legal conclusions cast as factual allegations. *Id.*; *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient).

A complaint must "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. To survive a motion to dismiss, a complaint must include non-conclusory factual content. *Id.* at 555; *Iqbal*, 556 U.S. at 679. The facts and the reasonable inferences drawn from those facts must show a plausible—not just a possible—claim for relief. *Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. at 679; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The focus is on the complaint, as opposed to any new facts alleged in, for example, the opposition to a defendant's motion to dismiss. *See Schneider v. California Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), *reverse and remanded on other grounds as stated in* 345 F.3d 716 (9th Cir. 2003). "Determining whether a complaint states a plausible claim for relief [is] … a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss*, 572 F.3d at 969.

//

//

3:25-cv-1295-JES-MMP

## IV.   DISCUSSION

County Defendants move to dismiss Plaintiffs' claims against them on the basis that (1) Plaintiffs fail to state a claim under *Monell* against the County because they fail to causally relate any policy or practice to the alleged constitutional violations; (2) Plaintiffs' state law claims fail to state a statutory basis against County Defendants; and (3) Plaintiffs fail to allege supervisory liability against Sheriff Miramontes, Capt. Chavarin and Lt. Wilson; and (4) Plaintiffs do not properly allege specific facts properly identifying Doe Defendants. ECF No. 14-1 ("County Mot.") at 6. NaphCare argues that Plaintiffs' claims against it should be dismissed on the basis that (1) Plaintiffs fail to state sufficient factual information in regards to all claims, and (2) Plaintiffs' state law causes of action are barred by the statute of limitations. ECF No. 15-1 ("NaphCare Mot.") at 5. The Court evaluates these arguments below as to each claim.

### A. Claims Arising Under 42 USC § 1983

Plaintiffs bring claims arising under 42 USC § 1983 against Doe defendants, named individual Defendants, and entity Defendants. "Traditionally, the requirements for relief under [§] 1983 have been articulated as: (1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The Court analyzes the arguments of the parties regarding the sufficiency of each claim below.

### 1.  Doe Defendants

Plaintiffs' first, second, third, and fifth claims arise under 42 U.S.C. § 1983 against individual defendants, including Does 1-10 employed by the County and NaphCare. County Defendants argue that the Doe allegations are insufficient because the Does are not adequately identified by the allegations. ECF No. 14-1 at 19.

For all individual defendants, Plaintiffs must show that "each defendant personally played a role in violating the Constitution." *Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019). Indeed, "[a]n official is liable under § 1983 only if culpable action, or inaction, is

directly attributed to them." *Id.* (internal quotation omitted). When the names of individual defendants are unknown, "the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). To survive a motion to dismiss, Plaintiffs must allege the action or inaction taken by the Doe Defendants that gave rise to the cause of action. *Lomeli v. Cnty. of San Diego*, 637 F. Supp. 3d 1046, 1057 (S.D. Cal. 2022).

### a. Failure to Protect from Harm

Plaintiffs' first claim is a survival action brought by the Estate against Doe Defendants 1-10 for Failure to Protect from Harm. Compl. ¶¶ 58-76. In *Castro v. Cnty. of Los Angeles*, the Ninth Circuit held:

> [T]he elements of a pretrial detainee's Fourteenth Amendment failure-to-protect claim against an individual officer are:
>
> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
>
> (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
>
> (4) By not taking such measures, the defendant caused the plaintiff's injuries.
>
> With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case.

833 F.3d 1060, 1071 (9th Cir. 2016) (internal quotations omitted). This objective deliberate indifference standard also applies to cases involving pretrial detainees' suicide or suicide attempts in custody. *See, e.g., Moriarty v. Cnty. of San Diego*, No. 17cv1154-LAB (AGS),

3:25-cv-1295-JES-MMP

2019 WL 4643602 at *6 (S.D. Cal. Sept. 24, 2019); *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 600 (9th Cir. 2019).

Here, Plaintiffs have two core theories of how Defendants failed to protect Decedent from harm. The first is that Defendants failed to identify Decedent's mental health issues due to inadequate screening procedures, which led to him not receiving care necessary to reduce the risk of his suicide. Compl. ¶¶ 4, 22, 48, 59-60. The second is that Defendants did not perform safety and welfare checks of individuals in custody and falsified logs regarding those safety checks, leading to Decedent's death. *Id.* ¶¶ 59, 64, 71. Plaintiffs allege that these actions were undertaken by employees of the County and NaphCare, and that three Doe Defendants in supervisory roles knew of and ratified this conduct. *Id.* ¶¶ 24-27. Assuming these allegations, taken as true, are sufficient to show (1) an intentional decision to conduct inadequate mental health screening and/or not perform safety checks; (2) which created a substantial risk of serious harm of violence in custody; and (3) failure to take reasonable measures such as adequate screening and/or safety checks, making the possible consequence of detainee self-harm obvious, Plaintiff still does not allege non-conclusory facts sufficient to show causation. *See Castro*, 833 F.3d at 1071; Compl. ¶ 72. The Court examines below the facts alleged in the complaint that could go to causation, and finds that Plaintiffs have not alleged a sufficient factual basis under federal pleadings standards.

To show that Defendants' inadequate mental health screening and subsequent lack of risk abatement caused Decedent's death, Plaintiffs would have to allege non-conclusory facts showing that Defendants were or should have been on notice of Decedent's condition. Plaintiffs argue that they have done so, both by Plaintiffs alleging that Decedent exhibited "obvious signs" of "mental health issues," but do not make any allegations regarding what those signs were, or how Defendants should have known from those signs that Decedent was at risk of suicide. Compl. ¶ 34. Similarly, Plaintiffs allege that Decedent showed "clear signs" of "acute suicidality." *Id.* ¶ 35. This language is conclusory. The complaint's use of adjectives like "obvious" and "clear," and statements that he was exhibiting noticeable

3:25-cv-1295-JES-MMP

signs, are legal conclusions without supporting factual allegations regarding the actual behavior at issue. Thus, under federal pleading standards, the Court cannot find that Plaintiff has pled that Defendants should have been on notice of Decedent's mental health issues without some specific factual allegations from which notice may be inferred. *See Iqbal*, 556 U.S. at 678.

To show that a lack of safety checks caused Decedent's death, Plaintiffs would have to allege non-conclusory facts that link the lack of safety checks to the death itself. The complaint contains very few facts about Decedent's death considering it is the single event which gives rise to this suit. On the eighteenth page of the complaint, in alleging punitive damages, Plaintiffs state for the first time that Decedent died by self-induced asphyxiation. Compl. ¶ 57. On the sixteenth page, Plaintiffs allege that Decedent was placed in a cell which was "not suitable for an inmate who exhibited clear signs of suicidal ideations because the jail cell contained suicide hazards and was unreasonably dangerous for housing inmates with identified mental health concerns." *Id.* ¶ 48. Plaintiffs allege that Defendants failed to perform welfare and safety checks, implying that such checks would have prevented Decedent's death. *Id.* ¶ 36. The Court can infer from the allegations made that Decedent used an object in the jail cell to asphyxiate himself. However, without more factual allegations regarding how Defendants could have prevented Plaintiffs death, the Court cannot find that Plaintiff has alleged the causation element of a failure to protect claim.

In conclusion, Plaintiffs have not alleged facts which, taken as true, show the causation element of a failure to protect claim. The Court thus **GRANTS** Defendants' motions to dismiss Plaintiffs' first cause of action, with leave for Plaintiffs to amend the complaint in accordance with the Court's reasoning above.

### b. Failure to Provide Medical Care

Plaintiffs' second claim is a survival action brought by the Estate against Doe Defendants for Failure to Provide Medical Care. Compl. ¶¶ 77-84.

3:25-cv-1295-JES-MMP

"Individuals in state custody have a constitutional right to medical treatment," which, for pre-trial detainees, "arise[s] under the Fourteenth Amendment's Due Process Clause." *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021). To state a claim,

> [P]retrial detainees alleging that jail officials failed to provide constitutionally adequate medical care must show:
>
> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined [including a decision with respect to medical treatment];
>
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
>
> (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
>
> (4) By not taking such measures, the defendant caused the plaintiff's injuries.
>
> To satisfy the third element, the plaintiff must show that the defendant's actions were "objectively unreasonable," which requires a showing of "more than negligence but less than subjective intent—something akin to reckless disregard.

*Id.* at 669 (internal quotations and citations omitted).

Here, Plaintiffs allege that Doe Defendants did not provide appropriate emergency medical care and mental health care to Decedent, leading to his death. Compl. ¶ 79. Plaintiffs allege that this failure arose from supervisory failures to train, supervise, and promulgate appropriate policies. *Id.* However, Plaintiffs do not allege in this section any specific actions that Defendants took, did not take, or should have taken in Decedent's medical care. *See id. generally.* Without any factual allegations regarding the medical care that was or was not provided, the Court cannot infer that Defendants can be held liable for failure to provide medical care. *See Iqbal*, 556 U.S. at 678. If Plaintiffs mean that

3:25-cv-1295-JES-MMP

Defendants inadequately screened Decedent for mental health issues and then failed to implement mental health care as a result, they have not alleged facts to show notice of mental health issues as explained above. The Court thus **GRANTS** the motion to dismiss Plaintiffs' claim for failure to provide medical care, with leave to amend should Plaintiffs be able to allege a factual basis for their claim under federal pleading standards.

### c.  Deprivation of the Right to Familial Relationship

Plaintiffs' third claim is brought by Decedent's family members against Doe Defendants for Deprivation of the Right to Familial Relationship with the Decedent. Compl. ¶¶ 85-97.

"[P]arents have a Fourteenth Amendment liberty interest in the companionship and society of their children." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). "Official conduct that 'shocks the conscience' in depriving parents of that interest is cognizable as a violation of [substantive] due process." *Id.* (internal citations omitted). The standard for conscience-shocking official action to state a familial association claim depends on the temporality of the officer's actions. *See Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). When officers make snap judgments in fast-paced situations, the officer's conduct shocks the conscience if he or she acts with a purpose to harm that was unrelated to legitimate law enforcement objectives. *Id.* at 1139. Contrastingly, when officers fail to care or correct obvious mistakes over an extended timeframe with opportunities to do so, their conduct may shock the conscience under a standard of deliberate indifference. *Id.* Deliberate indifference may be the proper standard in less prolonged situations when, for example, officers ignoring a distressed detainee and then unresponsive behavior prior to death. *Quinto-Collins v. City of Antioch*, 718 F. Supp. 3d 1033, 1056 (N.D. Cal. 2024).

Here, as Decedent has died, his parents have been deprived of their constitutionally protected interest in his companionship. *See Wilkinson*, 610 F.3d at 554.  Plaintiffs state that Doe Defendants were deliberately indifferent to Decedent's protection, safety, and serious medical and mental health needs. Compl. ¶ 86. Plaintiffs incorporate by reference their other factual allegations, including that Defendants did not conduct welfare checks,

falsified logs, did not train their employees on mental health care, and were on notice of the dangers of these failures from previous deaths in custody. *Id.* ¶¶ 42, 44, 47, 50, 59, 64, 71, 85. Plaintiffs argue that those failures caused their harm (*id.* ¶ 86) but, as explained above, do not allege a factual link between Defendants' behaviors and Decedent's death necessary to link the two under federal pleading standards. Thus, for the reasons set forth above, the motion to dismiss Plaintiffs' deprivation of familial association claim is **GRANTED** with leave to amend.

### d. Failure to Supervise

Plaintiff's fifth claim is brought by the Estate against Doe Defendants 8-10 on a theory of Supervisory Liability for Failure to Properly Train, Supervise, and Discipline. Compl. ¶¶ 106-114.

A supervisory official may be liable under section 1983 for the unconstitutional conduct of his subordinates "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black,* 885 F.2d 642, 646 (9th Cir.1989). "A supervisor will rarely be directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury." *Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991).

Here, Plaintiffs do not allege any personal involvement by any of the individual Doe Defendants. Thus, the individual Doe Defendants are only liable if Plaintiffs allege a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *See Hansen*, 885 F.2d at 646. Plaintiffs allege that the supervisory Doe Defendants failed to properly train and supervise their employees with deliberate indifference to the constitutional rights of those in their care, leading to unconstitutional acts. Compl. ¶¶ 108-109. The Court infers that the Plaintiffs mean the unconstitutional acts analyzed above regarding inadequate identification of mental health issues and inadequate or falsified safety checks. As explained above, Plaintiffs have not alleged facts which show causation for those claims. Without facts to show that the underlying actions caused

3:25-cv-1295-JES-MMP

Decedent's death, the Court cannot evaluate whether Plaintiffs have sufficiently pled a causal connection as required for a separately pled supervisory liability cause of action. *See Hansen,* 885 F.2d at 646. Thus, the motion to dismiss Plaintiffs' standalone supervisory liability cause of action against the Doe Defendants is **GRANTED** with leave to amend.

### 2. Named Individual Defendants

Plaintiffs also allege their fifth claim for supervisory liability causing constitutional violations against Defendants Sheriff Miramontes, Capt. Chavarin, and Lt. Wilson. Compl. ¶¶ 106-114. Like the Supervisory Liability claim against the Doe Defendants, this claim does not contain nonconclusory allegations showing causation. The Court thus **GRANTS** the motion to dismiss Plaintiffs' supervisory liability claim against Defendants Sheriff Miramontes, Capt. Chavarin, and Lt. Wilson.

Plaintiff also names these individual defendants in other civil rights causes of action only pled against Doe Defendants. *See, e.g.,* Compl. ¶¶ 64, 71. However, as those claims are not pled against the individual named defendants, the Court declines to analyze them as such here.

### 3. Entity Defendants

Plaintiffs' fourth cause of action is against both County Defendants and NaphCare for entity liability for pattern or practice of employee conduct under 42 U.S.C. § 1983 as interpreted in *Monell*. Both groups of defendants argue that Plaintiffs failed to adequately plead their liability. ECF Nos. 14-1 at 8-12; 15-1 at 7-10. Because Plaintiff's allegations of policy and causation are the same against both entity Defendants, and Defendants make essentially identical arguments for dismissal, the Court considers the arguments together here.

In *Monell*, the Supreme Court held that local governments can be held liable under 42 U.S.C. § 1983 for injuries caused by their officers' unconstitutional actions when those injuries result from official policy or custom attributable to the government. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A plaintiff may state a *Monell* claim by alleging "(1) that the plaintiff possessed a constitutional right of which he was deprived;

(2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996). At the pleading stage, a plaintiff's Monell claim must contain "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" which, taken as true, "plausibly suggest an entitlement to relief." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012). The Court examines each prong of Monell liability in turn below.

### a. Deprivation of a Constitutional Right

Here, Plaintiffs allege, and Defendants do not contest, that Decedent had constitutional rights protected by the Fourth and Fourteenth Amendments to be free from deliberate indifference to serious medical and mental health needs. Compl. ¶ 136. Defendants also do not appear to contest that Plaintiff was deprived of that interest, but rather that they are not responsible for such deprivation. ECF Nos. 14 at 10-14; 15 at 10. Thus, Plaintiffs have adequately pled the first element of a *Monell* claim.

### b. Municipal Policy

The Ninth Circuit has defined a policy as "a deliberate choice to follow a course of action … made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (internal quotation omitted). A plaintiff may allege a policy exists either through the entity's affirmative activity or through inactivity such as a "failure to implement procedural safeguards to prevent constitutional violations" that amounts to "deliberate indifference to the plaintiff's constitutional right." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (internal quotation omitted). Plaintiffs may also proceed on a theory of an unofficial policy which, "although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Brown v. City of Fort*

*Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

Here, Plaintiffs allege both a set of official policies Defendants were required and failed to adhere to (such as staffing the jail's medical and mental health units, designing and implementing a suicide prevention program, creating and implementing policies related to the provision of mental health care, and providing oversight of mental health units) and a set of unofficial policies or customs employed by Defendants in practice (including denying detainees access to care, encouraging the falsification of safety check logs, and failing to implement training and care regarding suicide prevention). Compl. ¶¶ 99-100.

Both County Defendants and NaphCare take issue with the specific policies which Plaintiff alleges they were required to have in place: NaphCare calls them a "random list of policies," (ECF No. 15-1 at 8) and County Defendants emphasize that "[t]o state the obvious, the County is not a medical or nursing school." ECF No. 14-1 at 11. But the alleged policies are as straightforward and common sense, like "operational oversight for the medical and mental health units" and "continuous training to detention staff regarding the screening of inmates, identification of mentally ill inmates, risk recognition, and suicide prevention." Compl. ¶ 46. The complaint alleges that neither NaphCare nor the County adequately trained RADF employees on basic mental health screening and identification of suicidal behaviors. *Id.* ¶¶ 46, 100. Considering California's requirement that jails provide competent mental health screening by trained employees at intake, the Court does not find the alleged policies "random" or believe that an allegation that such policies exists holds the County to the standard of a medical school. *See* 15 C.C.R. § 1207 (requiring a screening at intake which "shall include… mental health problems" "in accordance with written procedures" and "performed by licensed health personnel or trained facility staff."). The Court also does not take lightly that Plaintiff alleges that Defendants failed to implement safety checks and encouraged their employees to falsify related records. Compl.

¶ 100. Thus, Plaintiffs have adequately pled policies attributable to a municipality as required by *Monell*.

### c. Deliberate Indifference

Deliberate indifference for *Monell* liability is an objective standard. *Castro*, 833 F.3d at 1076. The core inquiry in determining whether a municipality was deliberately indifferent is whether it had "actual or constructive notice" that the action or inaction in question was "substantially certain to result in the violation of the constitutional rights of their citizens." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 396 (1989). Plaintiffs can meet this standard by either showing that "the policy [is] so facially deficient that any reasonable policy maker would recognize the need to take action," or by showing "a pattern of prior, similar violations of federally protected rights, of which the relevant policy makers had actual or constructive notice." *Hyun Ju Park v. City & Cnty. of Honolulu*, 952 F.3d 1136, 1142 (9th Cir. 2020). For harm in custody cases, plaintiffs may plead notice by alleging specific prior incidents resulting from the policy in question prior to the incident giving rise to the suit, and/or by citing to other ways the city should have known of the harm that was likely to result from the policy or custom. *See, e.g., Laurel v. Cnty. of Alameda*, No. 24-cv-04427-RFL2025, WL 2402674 (N.D. Cal. Aug. 19, 2025) (denying motion to dismiss where plaintiff alleged notice based on eleven highly publicized specific deaths and a federal investigation showing inadequate healthcare in a jail); *Heath v. Miani-Dade Cnty.*, 736 F. Supp. 3d 1149 (S.D. Fla. 2024) (denying a motion to dismiss where the complaint identified three suicides in custody, a report on inadequacies, and prior agreements by the municipality to screen for mental health risks). To show notice for unofficial policy allegations, Plaintiffs must show that "custom or practice, while not adopted as an official formal policy, may be so pervasive as to be the functional equivalent of a formal policy." *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1330 n. 6 (11th Cir. 2003). A "single incident would not be so pervasive as to be a custom or practice." *Id.*

Here, Plaintiffs make few allegations of notice to show deliberate indifference that are not legal conclusions. *See, e.g.,* Compl. ¶¶ 5 (Defendants "had repeated notices" of

3:25-cv-1295-JES-MMP

unlawful conduct); 47 (Defendants "had been on notice for years"); 61 (Defendants "were on notice" of risk of harm). Plaintiffs allege that other deaths in custody show notice, but list one death which occurred before Decedent's death, which thus could not have put Defendants on notice of the inadequacy of their practices as to Decedent, and another which they do not even allege was a suicide or related to mental health issues. *See id.* ¶ 42. Further, Plaintiffs conclusory argue that their failure to train claims have such an obvious result that specific instances are unnecessary. ECF No. 24 at 13. Plaintiffs then allege for the first time that had "staff received appropriate suicide-prevention training, Mr. Silva could have been transferred to a hospital or, at minimum, placed on suicide watch in a safety cell under 24-hour supervision." *Id.* However, this claim does not appear in the complaint and the Court declines to analyze a theory not articulated in the complaint based on factual allegations not present in the complaint. Plaintiffs have thus not met their burden at the pleading stage to show deliberate indifference.

### d. Causation

Plaintiffs allege that these knowing failures to provide adequate care and prevent harm resulted in the death of Decedent. Compl. ¶ 51. As explained above, Plaintiffs have not alleged non-conclusory facts linking individual Defendants' alleged failures to Decedent's death. Similarly, here, Plaintiffs' arguments make the legal conclusion of causation or imply the likelihood of the alleged policies causing the harm, but do not allege non-conclusory factual allegations linking the alleged policies to the harm in practice. *See, e.g., id.* ¶ 104 (the only paragraph of the *Monell* claim going to causation in the complaint, alleging that "the aforementioned customs […] were a moving force and/or proximate cause of the deprivations of Gustavo Silva, Jr.'s clearly established and well-settled constitutional rights."); ECF No. 24 at 13 (arguing that if proper policies were in place, "Mr. Silva *could have* been transferred to a hospital." (emphasis added)). These legal conclusions or likelihood arguments are insufficient to allege causation under *Monell*. *See Mann v. Helmig*, 289 Fed. App'x 845, 850 (6th Cir. 2008) ("[P]roof merely that such a policy or custom was 'likely' to cause a particular violation is not sufficient; there must be

3:25-cv-1295-JES-MMP

proven at least an 'affirmative link' between policy or custom and violation; in tort principle terms, the causal connection must be 'proximate,' not merely 'but-for' causation-in-fact.") (internal citation omitted). Plaintiffs have thus not met their burden to allege causation.

In conclusion, the motions to dismiss Plaintiffs' *Monell* claims are **GRANTED** with leave to amend.

### B. Negligence

Plaintiffs' sixth cause of action is common law negligence against all Defendants. Compl. ¶¶ 115-122. "In order to establish negligence under California law, a plaintiff must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages." *Ileto v. Glock Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003). As explained above, Plaintiffs have not adequately pled causation for Decedent's death. The Court also briefly examines below the vicarious liability and timeliness issues briefed by the parties.

Whether the County can be vicariously liable for its employees' negligence turns on whether the immunity provision of California Government Code § 845.6 applies. That code, in relevant part, makes public entities and their employees immune from suit for the failure to furnish medical care for a prisoner, unless the employee knows or has reason to know that the prisoner is in need of immediate medical care and fails to summon such care. Cal. Gov't Code § 845.6. As explained above, Plaintiff has not yet pled non-conclusory facts showing that Defendants were on notice of Decedent's mental health condition or Decedent's plan to commit suicide prior to doing so. Thus, this code also bars suit at this time. The negligence claim against the city is **DISMISSED** with leave to amend.

NaphCare raises a timeliness defense to this claim based upon California's one year statute of limitations for professional negligence of a healthcare provider in a wrongful death action. *See* ECF No. 15-1 at 11-12; Cal. Civ. Proc. Code § 340.5. That code sets a statute of limitations of the sooner of two options: (1) three years after the date of the injury or (2) one year after the plaintiff discovers, or should have discovered, the injury. Cal. Civ. Proc. Code § 340.5. By California law, the general rule is that injury accrues in a wrongful

death action on the day that a person died. *Larcher v. Wanless*, 18 Cal. 3d 646, 659 (1976). However, a later date of accrual may be appropriate when a plaintiff shows that he reasonably did not know of the negligent cause of his injury until a later date. *Gutierrez v. Mofid*, 39 Cal. 3d 892, 896 (1985).

Here, Decedent died on January 22, 2024, and this action was filed on May 21, 2025. *See* Compl. The complaint, upon which the Court must rely in deciding this motion, contains no facts showing that a later date of accrual would be appropriate. *See generally*, Compl. In their opposition to NaphCare's motion to dismiss, Plaintiffs attach a declaration of counsel that their counsel was not aware that NaphCare was the proper defendant in this action until November 19, 2024. ECF No. 16 at 11. However, that contradicts counsel's earlier statement that, "On July 15, 2024, Plaintiffs' counsel requested a copy of the decedent's medical and mental health records *after learning* NaphCare was the entity responsible for providing medical and mental health services at the Imperial County Sheriff's Office, Regional Adult Detention Facility." ECF 16-11, Declaration of Denisse O. Gastelum ("Gastellum Decl.") at 2 (emphasis added). Regardless, the Court must rely on facts pled in the complaint itself to determine whether a motion to dismiss is proper. *See Iqbal*, 556 U.S. 662, 678 (2009). Even if it could properly consider the declaration as an allegation in the complaint, the Court does not believe that counsel's late identification of the proper defendant constitutes Plaintiffs reasonably not knowing of the negligent cause of their injury. *See Gutierrez*, 39 Cal. 3d at 896. Plaintiffs do not identify any other reason the late discovery rule should apply in their briefing. Thus, Plaintiffs' negligence claim against NaphCare is **DISMISSED** without leave to amend.

### C. Medical Malpractice

Plaintiff also brings a medical malpractice claim against NaphCare. As to NaphCare, the same statute of limitations applies to medical malpractice claims for wrongful death as for negligence. Cal. Civ. Proc. Code § 340.5. Per the analysis above, Plaintiffs' medical malpractice claim against NaphCare is **DISMISSED** without leave to amend.

### D. Survival and Wrongful Death

3:25-cv-1295-JES-MMP

Plaintiff's eighth cause of action is a wrongful death action under California law against all Defendants and Does 1-10. Compl. ¶¶ 129-133. In their opposition to Defendant NaphCare's motion to dismiss, Plaintiffs conceded that NaphCare is not liable for this claim. ECF No. 16 at 13; Cal. Civ. Proc. Code § 340.5. Thus, Plaintiff's survival and wrongful death claim against NaphCare is **DISMISSED** without leave to amend.

As to County Defendants, California's wrongful death statute creates liability for a public employee "if the employee knows or has reason to know that the prisoner is in need of immediate medical care, and he fails to take reasonable action to summon such medical care." Cal. Gov't Code § 845.6. As explained above, Plaintiffs have not sufficiently alleged facts to show that Defendants were on notice of Decedent's need for medical care as required by the plain language of the statute. *See id.* Therefore, Plaintiff's survival and wrongful death claim against County Defendants is **DISMISSED** with leave to amend.

**E. Bane Act**

Plaintiffs' ninth cause of action is brought under California Civil Code § 52.1, the Bane Act, against all Defendants and Does 1-10. Compl. ¶¶ 134-143.

The Bane Act "provides a cause of action for violations of a plaintiff's state or federal civil rights committed by threats, intimidation, or coercion." *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014) (internal quotation omitted). The Ninth Circuit has explained that "the Bane Act does not require the 'threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation alleged." *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018). However, analyzing California legal precedent and the Bane Act's purpose of preventing hate-based state action, the Circuit court did find that Plaintiffs must show that the Defendant had the specific intent to commit the constitutional violation. *Id.* Reckless disregard for a person's constitutional rights may serve as evidence of a defendant's specific intent under the Act. *Id.* at 1045.

Here, Defendants argue that Plaintiff has not met the standard to show deliberate indifference to Decedent's medical needs, let alone allege the specific intent to violate

3:25-cv-1295-JES-MMP

constitutional rights necessary for a Bane Act claim. ECF Nos. 14-1 at 17-18, 15-1 at 13. Plaintiffs refute this by pointing to sections of the complaint that say, for example, "Defendants, each acting in concert/conspiracy, as described above, while decedent Gustavo Silva, Jr was in custody, and by threat, intimidation, and/or coercion, interfered with, attempted to interfere with, and violated Gustavo Silva, Jr.'s rights." ECF No. 24 at 20. Plaintiffs go on to point to allegations that Defendants "depriv[ed] Decedent of necessary care," "subject[ed] Decedent to ongoing violations of his rights to prompt care," "deliberately contract[ed] for and caus[ed] the provision of inadequate and incompetent medical health care," "requir[ed] medical and mental health staff to work outside their scope of treatment," and "institut[ed] and maintain[ed] the unconstitutional customs, policies, and practices described herein." *Id.* at 20-21 These allegations are troubling, but, as explained above regarding deliberate indifference, contain few non-conclusory facts to show notice or intent. Without something more than a recitation of legal conclusions regarding Defendant's knowledge of their actions, the Court cannot find that Plaintiffs have alleged that Defendants had the specific intent to violate Decedent's constitutional rights. *See Reese*, 888 F.3d at 1043. The Court thus **GRANTS** Defendants' motions to dismiss the Bane Act claim with leave to amend.

### F.  Americans with Disabilities Act and Rehabilitation Act

Plaintiffs' tenth and eleventh causes of action arise under 42 U.S.C. § 12132, the Americans with Disabilities Act ("ADA"), and 29 U.S.C. § 794(a), the Rehabilitation Act ("Rehab Act"), respectively, against Does 1-10. Compl. ¶¶ 144-173. "The standards used to determine whether an act of discrimination violated the Rehablitation Act are the same standards applied under the Americans with Disabilities Act." *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 884 (9th Cir. 2004).

Title II of the ADA, which applies to state and local governments, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

3:25-cv-1295-JES-MMP

County Defendants argue that Plaintiffs have not properly pled the identities of Doe Defendants. ECF No. 14-1 at 18-19. In evaluating the sufficiency of Doe Defendant allegations, courts look to whether the allegations are sufficiently specific to give notice and to state a claim once Doe Defendants are identified. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980); *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999). While Plaintiffs need not plead Doe allegations against government officers with perfect specificity as to the acts of each officer, they must allege actions or inactions of the Does which tie the Does to the claims. *See, e.g., Estate of Osuna v. Cnty. of Stanislaus*, 392 F. Supp. 3d 1162, 1169 (E.D. Cal. 2019) (finding Doe allegations against officers "who encountered the decedent on the day he was killed" sufficient); *Urquijo v. State*, No. 5:22-cv-02133-AH (DTBx), 2025 WL 2005446, at *3 (C.D. Cal. Feb. 27, 2025) (finding Doe allegations against officers who were at the scene and fired their service weapons sufficient).

Here, the complaints identifies Does 1-10 as law enforcement and medical personnel who were employed by the County and NaphCare. Compl. ¶ 24. However, in making ADA claims, Plaintiffs do not distinguish the particular actions or inactions which constitute discrimination, nor do they explain what disability Doe Defendants discriminated against. *Id.* ¶¶ 144-173. In their opposition to the County's motion to dismiss Doe Defendants, Plaintiffs list all of their theories of the case again, and confusingly add the following claim, which also occurs once in the complaint itself: "failing to enact policies to address the constitutional rights of protesters despite the obvious need for such a policy." ECF No. 24 at 22; Compl. ¶ 27. First, as explained above, Plaintiffs' other theories of the case lack alleged facts showing that Decedent's mental health issues were known to Defendants. Second, regarding the language quoted above, the Court is confused by the inclusion of this allegation because Plaintiffs have not alleged that Decedent was a protester. Because Plaintiffs have failed to allege facts tying Doe Defendants to ADA or Rehab Act claims, Defendants do not have adequate notice to defend against those claims. *See Gillespie*, 629

3:25-cv-1295-JES-MMP

F.2d at 642. Thus, Plaintiff's ADA claims and Rehab Act claims are **DISMISSED** with leave to amend.

## V.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motions to Dismiss, ECF Nos. 14, 15. The Court grants Plaintiffs leave to amend their first, second, third, fourth, fifth, ninth, tenth, and eleventh causes of action as to all defendants, and their sixth and eighth causes of action as to County Defendants but not NaphCare. Plaintiffs may file their Amended Complaint, if any, no later than **June 17, 2026**. The Court cautions Plaintiffs that failure to cure the deficiencies present in this complaint in an amended complaint may bar their opportunity for future leave to amend. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("A district court…may in its discretion deny leave to amend…due to repeated failure to cure deficiencies by amendments previously allowed.") (internal quotations and citations omitted).

**IT IS SO ORDERED**.

Dated:  May 26, 2026

_____
Honorable James E. Simmons Jr.
United States District Judge

22

3:25-cv-1295-JES-MMP